# Gordon *v.* McIlwain.

*Bill in Equity by Judgment Creditor, to set aside Conveyance as Fraudulent.*

1. *Fraudulent and voluntary conveyances; existing and subsequent creditors.*—A voluntary conveyance is fraudulent in law as against existing creditors, but a subsequent creditor can only impeach it on the ground of fraud in fact; and where the only proof of the complainant's debt is the record of his judgment, recovered six days after the execution of the conveyance, he is a subsequent creditor.

2. *Same; proof of fraud in simulated consideration.*—Where the debtor, six days before the rendition of the complainant's judgment, conveyed all his lands, on the recited consideration of $6,000 paid, to his brother, who had notice of the pending suit, and who, on the next day, reconveyed the property, by deed of gift, to the debtor's wife and children; the only proof of the consideration being the testimony of the grantee, to the effect that the lands were conveyed in payment of an antecedent debt for money loaned, at different times, three, eight, and fifteen years before, which he had never attempted to collect, though the debtor had property, and had never returned in his assessment lists for taxation; *held*, that the evidence was not sufficient to establish a *bona fide* purchase.

APPEAL from the City Court of Selma, in equity.

Heard before the Hon. JONA. HARALSON.

The bill in this case was filed by W. C. Gordon, as a judgment creditor of Samuel P. McIlwain, against the said Samuel P. and his brother, John H. McIlwain; and sought to set aside, on the ground of fraud, a conveyance of lands

executed by said Samuel P. to John H., and to subject the property to the satisfaction of the complainant's judgment. On final hearing, on pleading and proof, the bill was dismissed; and the decree dismissing it is now assigned as error.

W. R. NELSON, and JNO. C. REID, for the appellant, cited the following authorities: *Pickett v. Pipkin,* 64 Ala. 526 ; *Harrell v. Mitchell,* 61 Ala. 270 ; *Hubbard v. Allen,* 59 Ala. 300 ; *Gordon, Rankin & Co. v. Tweedy,* 71 Ala. 271 ; *Pyron v. Lemon,* 67 Ala. 460 ; *Seals v. Robinson,* 75 Ala. 372 ; *Barton v. Barton,* 75 Ala. 402 ; *McCarthy v. Nicrosi,* 72 Ala. 332 ; 70 Ala. 433; *Byrne v. Marshall,* 44 Ala. 357 ; *Holman v. Crane,* 16 Ala. 576 ; *Potter v. Gracie,* 58 Ala. 309 ; *Seaman v. Nolen,* 68 Ala. 467 ; *Hull v. Adams,* 1 Hill, N. Y. 603 ; *Peacock v. Monk,* 1 Vesey, sr., 127.

SUMTER LEA, and J. C. COMPTON, *contra,* cited *Eureka Co. v. Edwards,* 71 Ala. 254 ; *Lawson v. Ala. War·house Co.,* 73 Ala. 289 ; *Nooe's Executor v. Garner,* 70 Ala. 443; *Bogle v. Bogle,* 23 Ala. 644; *Kirksey v. Kirksey,* 41 Ala. 626 ; *Harwood v. Harper,* 54 Ala. 668; *Dabney v. Mitchell,* 66 Ala. 503; *Merrill's Heirs v. Morrissett,* 76 Ala. 433 ; 62 Ala. 34; *Houston v. Blackman,* 66 Ala. 562; *Thames v. Rembert,* 63 Ala. 561; *Buchanan v. Buchanan,* 72 Ala. 55; *Crawford v. Kirksey,* 55 Ala. 293 ; *Young v. Dumas,* 39 Ala. 60; *Tompkins v. Nicholls,* 53 Ala. 197 ; *Rowland v. Plummer,* 50 Ala. 195 ; *Hodges v. Coleman,* 76 Ala. 120 ; Bump's Fraud. Con. 308.

STONE, C. J.—This is a suit in equity by a judgment creditor, and seeks to subject real estate to the payment of the judgment, on the alleged ground that the debtor transferred his property to delay, hinder, and defraud his creditors. The bill charges that, on January 19, 1885, appellant, as plaintiff, recovered a judgment against Samuel P. McIlwain, on which execution had been issued, and returned no property found; that six days before that time, viz., January 13, 1885, the said Samuel P. McIlwain conveyed his real estate by warranty deed to John H. McIlwain, his brother, on a recited consideration of six thousand dollars; that in fact this consideration was simulated, and no valuable consideration was given for the conveyance ; that by this conveyance the said Samuel P. was left without property subject to his debts, and was practically insolvent; that no change of the possession of the land took place, and Samuel P. remained in the enjoyment of the same ; and that this conveyance was made with intent to hinder, to defraud,

and to prevent the said Gordon from collecting his said claim.

There was an amendment of the bill, which averred that, immediately or soon after acquiring the title by said conveyance, John H. McIlwain, the grantee, on a consideration simply good, but not valuable, conveyed the land to the wife and children of the said Samuel P. The question is, as to the *bonu fides* of the conveyance to John H. McIlwain.

The only evidence this record supplies of a debt from Samuel P. McIlwain is the record of judgment recovered by complainant against him, six days after the conveyance of the land by the latter to his brother, John H. To maintain the complainant's suit, under such circumstances, it is not enough that the conveyance was voluntary, and without consideration. It must appear that the conveyance was made with intent to defraud, either the complainant or some one else.—*Lawson v. Ala. Warehouse Co.*, 73 Ala. 289.

The transaction in this case was between brothers; and the next day, after receiving the conveyance, the purchasing brother made a voluntary reconveyance of the entire property back to the wife and children of his vendor. The consideration was an alleged indebtedness from the latter to the former. No present consideration is claimed to have been paid. Only John H., the purchaser, was examined as a witness to prove the extent and nature of the consideration, while the grantor, Samuel P., who must have had equal knowledge, was not examined. John H. testified that, when he puichased the land, he knew the suit was pending against Samuel P., which culminated in the judgment this suit seeks to collect. Fear of losing the claim, or a desire to realize the amount due, could not have induced the purchase, for John H. did not retain one cent of the product of the tranaction. He required his brother to impoverish himself, by surrendering his entire estate, that he might, without consideration, reconvey it to the wife and children of the brother he had thus impoverished. Yet he testifies that, when he received the conveyance, neither his brother nor any member of his family was informed of his intention to reconvey.

Let us, however, further scan the testimony of this only witness who attempts to prove the consideration of this conveyance to him. Each of the brothers had a wife and children, and the occupation of each was that of farming. This witness gives no account of any income the purchaser had realized, except the patrimony which came alike to himself and his brother Samuel P. in 1880, and the profits of the farming operations. The division of the property was

[Gordon v. McIlwain.]

into three equal shares, and amounted to about seven thousand dollars to Samuel P., and, we suppose, the same amount to each of the others. Whether this division was in property, or in money, or partly in property and partly in money, the record does not inform us, farther than that the lands in controversy came to Samuel P. from his father's estate. Part of the consideration, according to this witness, was paid by him, "by receipting S. P. McIlwain, or releasing him of and for a debt of sixteen hundred dollars and upwards which he owed me. This debt was due me on the difference in valuation of the lands belonging to our father's estate. On a division he owed me the amount, and in paying him for the land mentioned in said deed, he agreed to take and did take said debt as cash, and as a part of said consideration, or deed-money. I mean by paying him the cash of four or five thousand dollars above set forth, that I had let him have money at sundry times before that, amounting, on the day said deed was delivered, to the said sum in cash. I am unable to give the exact dates and several amounts advanced and paid the said S. P. McIlwain, item by item, without having the drafts given for the money in my hands, and I have not said drafts with me. But I can give some of the amounts which go to make up said sum, to-wit: One thousand dollars in 1869; eight to nine hundred dollars in 1876, and eight hundred and eighty-three dollars from fall of 1881 to spring of 1882." The foregoing is, in substance, all the witness testifies as to special items constituting the consideration, as remembered by him. This witness testifies further, that he, the witness, received his discharge as a bankrupt in 1868. This was the second year of the operation of the bankrupt law of 1867. He testifies as follows: "My best recollection is, that I got my discharge in bankruptcy in the month of May, 1868; and when this occurred, I had paid every debt I owed in the world except two, paying out over three thousand dollars, the day before making application therefor, on my debts." This witness testifies as to his income from his planting operations for the eight years preceding and including 1884, as follows: "In the year 1877, I made about fifteen hundred dollars profit on my farming business. In 1878 and 1879—the two years—I cleared about seven thousand dollars. In 1880 I came out about even. In 1881 I lost about two thousand dollars. In 1882 I made clear about one thousand dollars. In 1883 I made clear about eighteen hundred dollars; and in 1884 I came out about even."

In weighing this testimony, certain reflections force them-

selves upon us. In 1868, John H., the witness, received his discharge as a bankrupt, paying immediately before that time three thousand dollars on his debts. Yet, according to his statement, in a little more than a year afterwards, he lent his brother one thousand dollars; and he is not shown to have made any effort to collect the debt, until it was used as a part of the consideration of the land purchased, in January, 1885.

In 1880, the father of the McIlwains died, and his estate descended to his children. A division was had, and Samuel P., although indebted to John H., ten years past due, was allowed to receive sixteen hundred dollars more than his share, for which he became debtor to John H. No effort is shown to have been made at that time to collect the loan of one thousand dollars, made ten years before.

It is testified that, in 1881, John H. lost about two thousand dollars in farming. Yet, in the winter following, he made a further loan to Samuel P. of eight hundred and eighty-three dollars, notwithstanding the latter had only the year before come into possession of his patrimony of about seven thousand dollars.

It will be observed that, in giving account of the wholly past consideration on which the deed was executed, one thousand dollars of the alleged indebtedness is stated to have been for money loaned more than fifteen years before the purchase; and eight to nine hundred dollars more than eight years before. Yet, we are not informed that any attempt had been made to collect these claims, which, *prima facie*, had been long barred by the statute of limitations. May not the inquiry be legitimately made, whether during all these years John H. McIllwain regarded these loans as existing debts, the collection of which he intended at some time to enforce. In this connection, we should consider the agreement of counsel, found in the record, that at no time did John H. McIlwain report or return to the tax-assessor for assessment, the alleged debt against Samuel P., which was the sole consideration paid for the land. And if he had no intention to collect the claim, can it, with any propriety, be said that such claim or claims come up to the required standard of valuable consideration? Does not this long unexplained forbearance intensify the equitable rule, that in a transaction such as this, between near relations, fuller proof of consideration and good faith must be made, than if it had been between strangers?

In *Hubbard v. Allen*, 59 Ala. 283, it was said: "The consideration attempted to be proved in support of the deed, is not the payment of money to the grantor, but the extin-

guishment of an indebtedness owing by him to the grantee, and to his wife, the daughter of the grantor. The sufficiency of the proof of a consideration must depend on the relations existing between the parties, the circumstances surrounding them when the transaction is entered into, and their subsequent conduct in reference to it. Clearer and more convincing proof will be required, if these are calculated to excite a just suspicion of the fairness of the transaction. . . . When it [family relationship] exists, and the rights of creditors are involved, clearer, fuller proof must be given of an adequate and valuable consideration, and of the good faith of the grantee or vendee, than would be required of a stranger.

In *Lipscomb v. McClellan*, 72 Ala. 151, is this language : " The transaction being between near relations, and entered into while a suit was pending to subject the property to the payment of the grantor's debt, to uphold it, it was necessary to prove the consideration to the satisfaction of the court, and to cause it plainly to appear that it was a real contract of sale, upon a real and sufficient consideration." So, in *Seals v. Robinson*, 75 Ala. 363, is this language : " The fact that a debtor strips himself of all visible, tangible property which is subject to execution at law, retaining only *choses* in action of uncertain, doubtful value, may not be conclusive proof of fraud. Taken alone, it may be weak and inconclusive. But it will awaken suspicion, and add strength to other circumstances, which may in themselves be also insufficient to prove his intent was fraudulent."—*Hamilton v. Blackwell*, 60 Ala. 545 ; *Harrell v. Mitchell*, 61 Ala. 270 ; *Thames v. Rembert*, 63 Ala 561 ; *Pickett v. Pipkin*, 64 Ala. 520 ; *Donegan v. Davis*, 66 Ala. 362 ; *Pyron v. Lemon*, 67 Ala. 458 ; *Gordon v. Tweedy*, 71 Ala. 202.

*Young v. Dumas*, 39 Ala. 60, is relied on to uphold this transaction. It is stated in the opinion in that case, " that the three notes from Mrs. Dumas to Horn were given to secure debts actually due and owing from the former to the latter." This was stated as fact, which would not have been done, if the proof had not been full, consistent, and satisfactory.

We think the evidence in this case is too unsatisfactory to establish the fact of a *bona fide* purchase. On the contrary, we hold that, under its fair and just interpretation, it leads to a satisfactory conviction, that the sale relied on in this case is not relieved of the suspicious circumstances attending it, but was fraudulent in fact, and must be set aside. We are, therefore, satisfactorily convinced that the chancellor erred.

[Doss v. Peterson.]

The decree of the chancellor is reversed, and a decree here rendered, granting to the complainant the relief he prays.   The register will take an account, and report to the court below the amount due the complainant, with interest computed to the coming in of the report.   All other questions are reserved for decision by the court below.

Reversed and rendered.