# Jefferson County Savings Bank *et al.* *v.* Eborn.

### *Action on Attachment Bond.*

1. *Exemplary damages against corporation.*—A corporation may be held liable for exemplary damages in suing out an attachment wrongfully and maliciously, although it acted only by an agent.

2. *Wrongful sale of attached goods.*—If the plaintiff in attachment, wrongfully intervening after the levy, induces the sheriff to sell the goods in unreasonably large quantities, thereby depreciating the price and causing a sacrifice, this would be a tort for which an action might lie ; but it can not be proved as an element of damages in an action on the bond.

3. *Separate action of detinue, as element of damages.*—The fact that the plaintiff in attachment had seized the goods under a writ in detinue, which suit he dismissed before suing out the attachment, has no connection with the attachment suit, and can not be considered as an element of the recoverable damages.

4. *Offer to compromise as evidence.*—In an action on an attachment bond, the plaintiff can not be allowed to prove that, before the attachment was sued out, he offered to convey property to the attaching creditor, in settlement of the debt, and that the offer was declined.

5. *Evidence as to quantity of attached goods; refreshing memory of witness.*—The plaintiff can not, for the purpose of showing the quantity of goods seized under the attachment, prove the percentage of profits on goods sold, though he may prove the amount of goods on hand at any particular time, with the diminutions and accretions by sales and purchases ; and he may refresh his memory, as to these facts, by referring to his books, if shown to have been correctly kept.

6. *Conclusiveness of sheriff's return, as to quantity of goods seized.*—As to the quantity of goods seized under the attachment, the sheriff's return on the writ is not conclusive, but the plaintiff may show that other goods were seized, whether omitted from the inventory by fraud or mistake.

7. *Opinion as to value of goods.*—A deputy-sheriff, who, though he did not levy the attachment, seized the same goods, a few days before, under a writ in detinue, may testify as to the value of the goods.

8. *Sale and conveyance by insolvent debtor to creditor; validity as against other creditors.*—A debtor who is in failing circumstances, or even insolvent, may make a sale and conveyance of his property in absolute payment of an existing *bona fide* debt; and if there is no material difference between the value of the property and the amount of the debt, and no use or benefit is reserved to the debtor himself, the conveyance will be sustained as against his other creditors.

9. *Same; when goods are subject to prior fraudulent mortgage.*—The fact that the goods, so sold in absolute payment of a *bona fide* debt, have been previously conveyed by a mortgage which is fraudulent as against creditors, being allowed to remain in the debtor's possession with power of sale, does not affect the validity of the subsequent absolute conveyance.

APPEAL from Birmingham City Court.

Tried before Hon. H. A. SHARPE.

This was an action brought by the appellee, B. F. Eborn, against the appellants, The Jefferson County Savings Bank and others, and seeks to recover both actual and punitive damages for the wrongful and vexatious suing out of an attachment by the defendant corporation against the said Eborn. There were several grounds of demurrer interposed by the defendant to the plaintiff's complaint. The first three grounds of demurrer are shown by the opinion. The other grounds were as follows:

"Fourth,—That it is no cause of action against these defendants, that the sheriff sold the goods levied upon in quantity and not in detail, as set forth in the first specification under the third assignment of breach of condition of bond in the complaint."

"Fifth,—That the ground of damage in said first specification is speculative and conjectural, and not the proximate result of the wrongful or vexatious suing out of said attachment."

"Seventh,—That the grounds of damages set forth in the 5th specification of damages under the third assignment of breach of the condition of said attachment bond, to-wit: that by said attachment plaintiff was prevented from making a settlement with his creditors, by paying them with goods, is speculative and conjectural, and is not ground of action against these defendants."

"Eighth,—That the seizure of said stock of goods under a writ of detinue set forth in the complaint, is no ground of action or of damages in a suit upon the attachment bond."

The court overruled all these grounds of demurrer, and the defendants excepted. Issue was then joined on the pleas of the defendants, which set up the general issue, and specially of not having sued out the attachment wrongfully and vexatiously; and that the goods were seized under a writ in detinue on account of the defendants' rights therein given them under the power of a bill of sale made to them by the plaintiff.

On the trial of the cause, the plaintiff first introduced in evidence the writ of detinue, which was issued and levied on the goods on the 15th of September, 1886; and also the sheriff's return thereon, and also showed that the same had been dismissed. There was evidence to show that the defendant, after dismissing the detinue suit instituted the attachment proceedings.

[Jefferson County Savings Bank et al. v. Eborn.]

The plaintiff offered to prove that at the time the attachment was levied on his stock of goods, he had a sufficient quantity of goods in his store to pay off all his indebtedness; and then offered to prove this by stating the amount of profits he had made on the goods sold, and in this way approximating the amount of goods he then had on hand. The defendants objected to this mode of proving the quantity of goods in the plaintiff's store; but the court overruled their objection, and they excepted. Upon the plaintiff, as witness, being asked "if he did not offer to settle with the bank?" "and if so at what offer did he make?" the defendant objected to this question, but the court overruled their objection, and allowed the plaintiff to answer the question; whereupon the defendants excepted. The plaintiff undertook to prove that the return of the sheriff of the goods seized by him under the writ of attachment was not complete, and did not contain all the goods levied on by him, the defendants objected, on the ground that the written return of the sheriff was conclusive as to the goods so levied on. But the court overruled the objection of the defendants, and allowed the plaintiff to testify as to the goods not so contained in the return of the sheriff, and the defendants excepted. In attempting to prove the value of the goods levied on there was some conflict, and upon the deputy sheriff Brown, who was examined as a witness, being asked to state the value of the goods levied on, under the circumstances as shown in the opinion, the defendant objected to this evidence by the witness Brown; but the court overruled their objection, and they excepted. It was proved that when the plaintiff gave the bill of sale to the defendant, upon which the detinue suit was instituted, and which witnessed the indebtedness which was the foundation of the attachment, he, (the plaintiff) was indebted to his mother in a large amount; and that before the attachment was levied and before the goods were seized under the writ of detinue, (just a very short time before), he made a bill of sale to a part of his goods to his mother. The other evidence, as bearing on the decision, is sufficiently shown in the opinion.

Upon the evidence, as produced on the trial, the court charged the jury, among other things, as follows:

1. "If you find that the plaintiff owed his mother a *bona fide* debt pre-existing, and he transferred the goods to her in payment of such debt by an absolute sale at a fair price, and in quantity not more than enough to pay her debt, then

the transaction was not fraudulent, and it does not matter with what intent he did so, nor with what intent his mother received the goods; and in that case, if there was no other cause for suing out the attachment, then it was wrongfully sued out, and the plaintiff would be entitled to recover."

2. " If you find that the plaintiff owed his mother a *bona fide* pre-existing debt, and paid her in goods by an absolute sale at a fair price, and in quantity not more than enough to pay the debt; that the mere fact that the plaintiff paid his mother in goods on which the defendant bank had a mortgage, was not a fraud authorizing the defendant, Jefferson County Savings Bank, to sue out an attachment."

3. "That corporations, although they act by agents, may be subjected to punitive damages." To each of these charges given by the court, the defendant separately and severally excepted. At the request of the plaintiff, the court gave the following charge, which was in writing: "Although the jury believe that B. F. Eborn had executed a bill of sale as mortgage security to the Jefferson County Savings Bank upon the stock of goods prior to the 15th September, 1886, and was permitted by the bank to remain in possession and sell said goods (this) would not render a sale of goods by him in payment of a *bona fide* debt to a creditor, at a fair price, fraudulent so as to justify an attachment against him." The defendant excepted to the giving of this charge; and then asked the court to give the following charges, which were in writing, and duly excepted to the court's refusal to give each of them.

2. "That if from the evidence, the jury believe after the making of said bill of sale, the plaintiff added other goods to his stock, covered by said bill of sale, not separating the new from the old, but mixing them so the mortgagee or the bank could not distinguish them, then the Jefferson County Savings Bank would be entitled to seize the goods under its bill of sale without being a trespasser."

3. "That if the jury believe that the said bill of sale covered or was upon the goods that the plaintiff Eborn, by his bill of sale to his mother, conveyed and sold to her, and if the jury believe that the said Eborn, by the sale of said goods, so mortgaged, did so for the purpose of hindering, delaying and defrauding The Jefferson County Savings Bank, or other person, then there was ground for the suing out of the attachment, and the levy of the attachment on the stock of goods was not wrongful, and the jury must find for the defendants."

[Jefferson County Savings Bank et al. v. Eborn.]

4. "That in this case, if the jury believe from the evidence, that said Eborn disposed of his said goods with the intent to defraud any creditor, then the levy of the attachment upon said stock of goods was not wrongful, and the plaintiff can not recover, and the verdict must be for the defendants."

6. "That in considering the question, whether the sale of goods mentioned in the inventory or list attached to the bill of sale to Mrs. Eborn was fraudulent, the jury will look at all the facts and conduct of Eborn connected with the transaction, such as concealment, secrecy, making up the list or inventory in the night time, and the removal of the goods at unusual hours."

7. "If the jury find that Eborn intended by his sale to his mother to hinder, delay and defraud the defendant, The Jefferson County Savings Bank, that although the jury believed Mrs. Eborn did not intend to commit a fraud, the attachment was not wrongful, and the jury must find for the defendants."

8. "That although Eborn owed his mother, yet, if he made the sale to her of his goods with the intent to hinder, delay and defraud his creditors, then the attachment was not wrongful, and the jury must find for the defendants."

9. "That a man is presumed to intend the natural consequences of his own acts; that if the sale of the goods to Mrs. Eborn, that Eborn had mortgaged to the Jefferson County Savings Bank, tended to hinder, delay and defraud the defendant, the Jefferson County Savings Bank, then the jury may conclude, that Eborn by his sale intended to commit a fraud."

10. "That if the jury believe the Jefferson County Savings Bank had a mortgage upon said stock of goods, so attached for the amount of the debt due it, The Jefferson County Savings Bank, then the plaintiff can not recover, unless the attachment was levied on more goods than was sufficient to pay its debt."

11. "That the jury in considering the amount of goods levied upon under the attachment, will not refer to the inventory made by the sheriff under the writ of detinue. The jury, as best they can, will ascertain the quantity of goods levied on under the attachment from the sheriff's return, and the proof as to the quantity of goods seized under the attachment."

There was a judgment in the lower court for the plaintiff;

the defendants thereupon appealed, and now assign the several rulings of the court upon the evidence, and the giving and refusal to give the several charges asked as error.

R. H. STERRETT and W. C. WARD, for appellants.

WEBB & TILLMAN, *contra*.

SOMERVILLE, J.—The suit is one on an attachment bond, claiming damages both actual and exemplary for the wrongful and vexatious suing out of an attachment by the defendant corporation against Eborn, the plaintiff.

1. The objection is raised by demurrer that the defendant, being a body corporate, can not be made liable for exemplary or punitive damages in the action. The court properly overruled the first three grounds of demurrer suggesting this objection, and charged the jury that corporations, although they act by agents, may be liable for damages of this character. There was no error in these rulings.—*Atlantic Glass Co. v. Paulk*, 83 Ala. 404; *Jordan v. Ala. Gr. So. R. R. Co.*, 74 Ala. 85; s. c., 49 Amer. Rep. 800; *Reed v. Home Savings Bank*, (130 Mass. 443); s. c., 39 Amer. Rep. 468; *Williams v. Planter's Ins. Co.*, (57 Miss. 759); s. c., 34 Amer. Rep. 494, and *note; P. W. & B. R. R. Co. v. Quigley*, 21 How. (U. S.) 210.

2. If the defendant, by wrongfully intervening after the levy upon the goods, induced or "caused" the sheriff to sell the goods in unreasonably large quantities, and not in detail, and this operated to depreciate the price for which they were sold, resulting in their sacrifice, this would be a tort for which the defendant might be liable in a different form of action, or even the sheriff himself, but not the sureties on the attachment bond, because the resulting damages would not be the natural and proximate consequence of the act of suing out the attachment. It would rather be the result of an intervening cause in no wise connected with the levy of the process, or not such as might be naturally expected to follow from it.

The fourth and fifth grounds of demurrer were well taken, and should have been sustained.

There is nothing in the seventh ground of demurrer assigned.

3. The seizure of the plaintiff's goods by the sheriff, under a writ of detinue issued from the City Court of Bir-

mingham, at the instance of the defendant, was a fact irrelevant to any issue properly triable in the present action. The introduction of this averment in the complaint was prejudicial to the defendant, as tending to lay the foundation for the aggravation of damages, which were recoverable, if at all, in a separate action on the detinue bond, and not in this suit. It was a purely collateral fact, incapable of affording a reasonable presumption or inference as to the principal matter or fact in dispute—the wrongful or vexatious suing out of the process of attachment, and the proximate damages resulting therefrom. And for this reason it tended to draw away the minds of the jurors from the true issue before them, and to mislead them, as well as to excite their prejudice.

4. The testimony of the plaintiff to the effect that, prior to the issue of the attachment, he made an offer to settle the defendant corporation's claim by conveying to it certain property, at a specified price which was declined, was irrelevant to any of the issues in the cause. It did not tend to shed any light upon the question of his intention to defraud the bank by the subsequent act of preferring another creditor.

5. It was not competent for the plaintiff to prove the percentage of profits on goods sold, for the colorable purpose of determining the quantity of goods seized by the sheriff, although it was permissible to prove for this purpose the amount of the goods on hand at any given time, and the quantity sold by way of diminution of the stock, with all additions made to it by accretion in the meantime. And in making proof of these facts, if they be within his personal knowledge, the witness could properly be allowed to refresh his memory by referring to his books, shown to have been correctly kept during the time in which he was carrying on his mercantile business.

6. The return of the sheriff was not conclusive as to the amount of goods seized by him under the writ of attachment. If other goods were seized, and were omitted from the inventory, whether by fraud or mistake, this fact could be proved as between the parties to the present action. *Hensley v. Rose*, 76 Ala. 373.

7. Inasmuch as the evidence tends to show that the goods seized in the detinue suit were the same as those taken under the attachment writ, the witness Brown, who made out the inventory in the former suit, and testified that he knew it to

be correct, was competent to state the value of the goods based on his knowledge thus acquired, in connection with his experience as deputy sheriff in taking other inventories and making sales of similar stocks of goods.

8. The charges given by the court below conform to the principles announced by this court, touching the subject of transfers and conveyances made by insolvent debtors, by way of preference, in absolute payment of debts due by them to *bona fide* creditors.—*Hodges v. Coleman*, 76 Ala. 103; *Meyer v. Sulzbacher*, 76 Ala. 120; *Levy v. Williams*, 79 Ala. 171; *Carter v. Coleman*, 82 Ala. 177. The various charges requested by the defendant, although many of them announced propositions of law generically correct, were properly refused on account of their misleading tendencies under the facts of this case. They ignored the particular rule settled in the cases last above cited, which is a qualification of the general rule as to fraudulent conveyances.

9. The *bill of sale*, executed by the plaintiff to the bank, being intended as a mere mortgage for the security of a debt, and the plaintiff having been allowed to retain possession of the mortgaged goods, and to sell them from day to day for his own benefit, this transfer was obviously fraudulent and void as to Mrs. Eborn, who was a creditor of the plaintiff at the time the instrument was executed.—*Benedict v. Renfro*, 75 Ala. 121; s. c., 51 Am. Rep. 429; *Sims v. Gaines*, 64 Ala. 392; *Danner L. & L. Co. v. Stonewall Ins. Co.*, 77 Ala. 184. It could therefore confer no rights on the fraudulent mortgagee as against existing creditors, including Mrs. Eborn, to whom the plaintiff sold his goods. It necessarily follows that the sale made to her by the plaintiff, if fair and valid, under the rule declared in *Hodges v. Coleman*, 76 Ala. 103, and other cases above cited, could not be made fraudulent by reason of this void bill of sale. A second conveyance, made upon a valuable consideration and in good faith, is always allowed to prevail over a prior conveyance which is fraudulent.—*Eddins v. Wilson*, 1 Ala. 237.

These views cover all the questions of importance likely to arise on another trial.

Reversed and remanded.