# Marx Bros. *v.* Leinkauff & Strauss.

*Action on Attachment Bond.*

1. *Loss of credit and business, as element of damages.*—Loss of credit and business by a merchant, resulting from the suing out of an at-tachment against him, is the natural consequence of the act, and is recoverable as damages in an action on the attachment bond, if specially averred and claimed in the complaint; but his credit with particular persons, and the loss thereof, is not a proper subject of averment or proof.

2. *Depositions of party; cross-examination.*—When a party has taken the deposition of his adversary on interrogatories (Code, §§ 2816–22), he is not required to offer it in evidence on the trial; but he can not offer a part of it in evidence, without making the whole admissible; and if his adversary testifies in his own behalf on the trial, he may be cross-examined as to any relevant matter bearing on the advisability of offering the deposition in evidence.

3. *Proof of value of goods.*—The value of the goods levied on and sold under the attachment, is a relevant and material subject of inquiry in an action on the bond; and the auctioneer who made the sale, and who had been engaged in that business for twenty years, may testify that, in his opinion, they brought a fair price under the circumstances.

4. *Proof of fraudulent disposition of goods, by selling at less than cost price.*—An attachment having been sued out on the ground that the debtors were fraudulently disposing of their goods, and an action afterwards brought by them on the attachment bond, it is competent for the defendants to prove, by a person who bought the goods from

[Marx Bros. v. Leinkauff & Strauss.]

them, the price which he paid, and by an agent of the attaching creditors, who identified the goods when pointed out to him by the purchaser, that this was less than the cost price; but statements made by these witnesses to each other, not in the presence of the debtors, are mere hearsay, and not admissible as evidence.

5. *Sale of goods by debtor, attacked by creditors as fraudulent; burden of proof; relationship of parties.*—When a sale of goods by a debtor is attacked as fraudulent, by creditors whose debts were in existence at the time, the *onus* is on the purchaser to prove the payment of a valuable and adequate consideration; and if the purchaser is a near relative of the debtor, clearer and more conclusive proof is required than when they are strangers; but the fact of relationship does not raise a presumption of fraud, nor impose on the purchaser the *onus* of proving the *bona fides* of the transaction.

6. *Same; charge ignoring part of evidence.*—An attachment having been sued out on the ground that the debtors were disposing of their property fraudulently, and an action afterwards brought on the attachment bond, the defendants introduced evidence showing frequent sales of goods by the debtors to a brother residing in an adjoining State. under circumstances tending to show fraud, and that the brother discontinued business when the property of the debtors was attached; while the evidence for the plaintiffs tended to show that the sales to their brother were made in the usual course of trade, and realized a fair profit. *Held,* that a charge instructing the jury that if the debt to the attaching creditors existed at the time of the sale of the goods by the debtors to their brother, "this fact, together with the relationship of the parties, may be looked to as a fact from which fraud may be presumed," ignoring the evidence tending to show the *bona fides* of the sales, was erroneous.

7. *Suing out attachment for greater amount than due.*—When an attachment is sued out for a greater amount than is actually due, it is not wrongful to the extent of the difference, the disparity not being great enough to support an action for a wrongful and vexatious resort to the process of attachment.

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. Semmes..

This action was brought by Marx Bros., late partners doing business in Mobile as merchants, against L. Strauss and J. H. Leinkauff, as sureties for H. B. Claflin & Co. on an attachment bond. The attachment was sued out, on the 22d November, 1887, on the ground that Marx Bros. "were about fraudulently to dispose of their property;" and it was levied on their entire stock of goods, with the lease of the building in which they carried on their business, all of which was afterwards sold under the attachment proceedings. The complaint contained two counts, the first of which averred that plaintiffs, before and at the time the attachment was sued out against them, were merchants in good standing, having good reputation and credit with all persons with whom they had dealings, and had not committed any act of fraud, and were not about to dispose of their property fraudulently; that the attaching creditors, knowing these facts, wrongfully and vexatiously sued out the attachment; that under the attachment proceedings "said property

[Marx Bros. v. Leinkauff & Strauss.]

levied on was caused to be sacrificed and sold for a sum greatly below its value, and plaintiffs' credit and standing was entirely destroyed, and they themselves caused to be looked upon as dishonest, and they were put to great cost and expenses in and about the defense of said suit; and by means of the premises plaintiffs have been wholly ruined in their circumstances. And plaintiffs further aver that, prior to the matters hereinbefore complained of, they were held in great regard by, and had a large credit with, each of the following firms, viz., M. P. Levy, A. G. Levy & Co., and J. Pollock & Co., and were able to borrow large sums of money from each of said persons; and that, by reason of the matters hereinbefore complained of, plaintiffs' credit with said several persons was greatly injured; to their damage," &c. The defendants demurred to this count, (1) to so much as claims damages for a sacrifice of the goods by a sale at less than their value, "because the complaint does not show that these defendants so sacrificed said property, or caused it, or that the sale under the attachment proceedings was conducted unfairly, or in such a manner as not to bring a fair price for the goods and property;" (2) to so much as "claims damages for the injury to plaintiffs' credit with M. P. Levy, A. G. Levy & Co., and J. Pollock & Co., because the loss of credit with particular persons can not be put in issue, or given in evidence on the trial of this cause." The court overruled the demurrer on the first ground, but sustained the second. There was no demurrer to the second count, which alleged that the attachment was sued out wantonly, recklessly, and without probable cause, and that the plaintiffs were greatly damaged in their credit and reputation by the attachment proceedings, and utterly ruined in their circumstances.

On the trial, the facts were admitted, (1) that the attachment was sued out on an alleged debt of $2,770.70, no part of which was then due, and which was entitled to a credit of $47.30, leaving a balance of $2,723.40; (2) that the attachment was sued out without previous demand on the debtors; (3) that Marx Bros., at the time the attachment was sued out, were indebted to various New York merchants in sums aggregating about $24,000, for goods bought in August, 1887, "with datings in September, October and November, and becoming due in December, January and February, according to a customary method of buying goods;" (4) that L. H. Marx, who was a brother of plaintiffs, "conducted a mercantile business at Shubuta, Mississippi, and had purchased goods from plaintiffs, from time to time, for a number of years;" (5) that J. Pollock & Co. "were wholesale dry-goods merchants in Mobile, and they and plaintiffs had frequently bought goods from each

[Marx Bros. v. Leinkauff & Strauss.]

other, and had a running account between them;" and (6) that plaintiffs, at the time the attachment was sued out, "were merchants in the city of Mobile, having a fair credit, and doing a wholesale and retail business." The defendants principally relied, as showing probable cause, on the facts proved in connection with the plaintiffs' transactions with L. H. Marx and J. Pollock & Co., their sale of goods to one Shuerman at less than cost, and their statements to creditors at different times, before the attachment was sued out, as to their pecuniary condition, their assets and liabilities.

In reference to these matters, the evidence was substantially as follows: "Plaintiffs testified that, at and prior to the time the attachment was sued out, they had sold no goods except in the usual course of business, and for a profit; that their sales to J. Pollock & Co., to L. H. Marx, and to Shuerman, were all made in the usual course of trade, and at a fair profit; and that they had not, otherwise than as above stated, sold any property of any kind, nor had they arranged, agreed, expected, or contemplated otherwise disposing of their property. One Prados, a former clerk in plaintiffs' employment, testified on behalf of defendants, that while he was in plaintiffs' service, for one year and eight months, they sold goods from time to time to said L. H. Marx, but such sales were more frequent shortly before the attachment was sued out than they had been previously; that sometimes goods would be hauled one day from the railroad depot to plaintiffs' store, and shipped to L. H. Marx on the next day; that sometimes, when L. H. Marx was in Mobile, he made plaintiffs' store his head-quarters, and sometimes he would carry away goods with him in a trunk as baggage;" also, that when goods were sold and sent to J. Pollock & Co., the draymen were frequently instructed to go to their store by an indirect route. The defendants' evidence showed, also, that in February, 1888, L. H. Marx sold out his business at Shubuta, and removed to the city of Mobile; but said Marx testified, on behalf of the plaintiffs, that he did this because his wife was unwilling to live in the country, and because the town of Shubuta was declining; also, "that he had never bought any goods from plaintiffs, otherwise than in the usual course of business." The plaintiffs themselves testified "that it was common for wholesale merchants in Mobile, in selling to retail merchants, to instruct their drivers to proceed by a circuitous route, in order to avoid rival houses engaged in the same line of business, and thus keep them from ascertaining with whom they were doing business;" and other witnesses corroborated this statement.

One Shuerman, or Sherman, a witness for defendants,

testified that he had been engaged in the shoe business for more than thirty years; "that in October and November, 1887, before the attachment was sued out, one of the plaintiffs frequently solicited him to buy goods from them, saying that they had a lot of goods to sell on commission, and would sell to him at 20 to 25 per cent. below cost; that on the day the attachment was sued out he bought from them a bill of shoes amounting to $361.85, and one of plaintiffs' brothers came to him, before he had opened the goods, and wanted payment for them; that he refused to pay at that time unless plaintiffs would give him a reduction of ten per cent., which the young man declined to do until he had seen plaintiffs; that he afterwards came back, and offered to make the reduction, but in the meantime a garnishment had been served on witness at the suit of the attaching creditors." The plaintiffs, testifying for themselves, denied that they had made any representations to Shuerman as to their having a lot of goods for sale on commission, but admitted that they might have offered to sell goods at less than cost, and said that this was customary among merchants desiring to effect sales; and in this last statement they were corroborated by other witnesses. Shuerman testified, also, that one Jacobs, representing Wallace, Elliott & Co., of New York, came into his store a few days after the attachment had been sued out, asked to look at the goods which he had bought from plaintiffs, and identified some of them as goods which plaintiffs had bought from his house in New York; and in these statements he was corroborated by Jacobs, who was afterwards introduced by defendants. Shuerman testified, also, that he had paid plaintiffs 80 cents per pair for some of the shoes which Jacobs identified, and which Jacobs said his house had sold to plaintiffs at 85 cents per pair; and the testimony of Jacobs was to the same effect. The plaintiffs objected to the admission of these statements of Shuerman and Jacobs to each other, because not made in their presence; and they excepted to the overruling of their objections.

The defendants had taken the depositions of the plaintiffs on interrogatories, but did not offer the depositions in evidence on the trial. During the oral examination of one of the plaintiffs on the trial, the defendants' attorney, holding the deposition in his hand, asked the witness several questions as to plaintiffs' indebtedness at the time the attachment was sued out, the amount of their purchases from different merchants in New York in August, 1887, their statements to those merchants as to their pecuniary condition, and other matters as to which they had been examined on the interrogatories.

The plaintiffs objected to each of these questions, "on the ground that the witness could' not be cross-examined on his deposition, unless it was offered in evidence." The court then suggested that the deposition be shown to the witness, in order that he might refresh his memory; and this having been done, the court allowed the questions, against the objections and exceptions of the plaintiffs.

J. K. Glennon, a witness for the defendants, who said that he had been an auctioneer, "off and on," for twenty years, and had sold the attached goods in this case, being examined as a witness for the defendants, testified that "he had examined the goods in a general way, but had not gone through them in detail; and that he thought the goods sold for a fair value, considering the circumstances under which they were sold." The plaintiffs objected and excepted to this last statement of the witness, on the ground that it was "immaterial and irrelevant, and because the witness was not shown to be an expert."

The court charged the jury, "among other things," as follows: (1.) "If the jury believe that Marx Bros. sold goods to Marx of Mississippi, and that the debt to Claflin & Co. then existed, this fact, together with the fact of the relationship of the parties, may be looked to, as a fact from which fraud might be presumed." (2.) "If the jury should find that plaintiffs, at the time of the attachment, were about fraudulently to dispose of their goods, then defendants would be justified in levying the attachment." The plaintiffs excepted to each of these charges, and also to the refusal of each of the following charges, which were asked by them in writing: (1.) "If the jury believe from the evidence that the attachment was sued out for $2,770.70, and that a part of this indebtedness was $47.30 previously due, but which had been paid before the attachment was sued out, then the attachment was, to that extent, wrongfully sued out." (2.) "There is no evidence that any goods were sold or sent to their brother, otherwise than in the due course of trade."

The plaintiffs also excepted to each of the following charges, which were given on request of the defendants: (1.) "In determining whether or not the plaintiffs were about fraudulently to dispose of their property at the time of the attachment, the jury are authorized to look at all the evidence, the conduct, acts and declarations of the plaintiffs, prior to, about the time of, and after the date of the attachment; and the amount or quantity and times of the shipments of goods to L. H. Marx, if any were made, and the relationship of the plaintiffs to Lee H. Marx, and the sales to merchants in the

city, and prices at which such sales were made; and at the course of dealing of plaintiffs, either in buying or selling, in and about the Fall of 1887; and may consider whether the disposition of goods prior to the attachment was fair or fraudulent, to arrive at a conclusion; and if on the whole evidence they fairly believe that the plaintiffs were about to fraudulently dispose of their property, they must find for the defendants. And if on such consideration of the whole evidence they can not satisfactorily determine whether, at the time of the attachment, the plaintiffs intended to fraudulently dispose of their property or not, then they must likewise find for defendants, as the burden of disproving this fraudulent intent rests on the plaintiffs." (2.) "The burden of proof is on the plaintiffs, to show the falsity of the affirmation of fraud, upon which the attachment was sued out, and they must reasonably satisfy the minds of the jury of such falsity; and if the evidence leaves them confused or uncertain as to the truth or falsity of such charge, they must find for the defendants." (3.) "A sale to a near relative should, where, as in this case, the question of fraud is involved, be scrutinized very closely, and may be a strong circumstance of fraud, and may be considered in connection with the volume of sales or shipments to such relative, and with the discontinuance of the business of such relative, if such discontinuance took place shortly after the said shippers of goods were closed up and ceased to ship." (4.) "The plaintiffs have based their suit on the averment that the allegation in the attachment affidavit, 'that they were about fraudulently to dispose of their property,' was untrue; and to recover in this suit, they must prove its untruth, the burden resting upon them to make out their case; and, therefore, if upon all the evidence the plaintiffs have failed to satisfy the jury of its untruth, then the jury must find for the defendants." (5.) "The issues in this case involves the inquiry, whether, at the time the attachment was sued out, the plaintiffs had a fraudulent intent; and the existence of such intent need not be proved by direct and positive evidence, but may be inferred from circumstances that may be in evidence leading to a rational conviction of its existence; and the jury should therefore take a comprehensive and comparative view of said plaintiffs' acts before, at and after the suing out of the attachment, as the same appears to the jury from the evidence, looking at all the evidence in the case."

The plaintiffs appeal, and assign as error all the rulings of the lower court on the pleadings and evidence, and in the matter of charges given and refused.

[Marx Bros. v. Leinkauff & Strauss.]

G. L. & H. T. SMITH, for appellants, argued each assignment of error, and cited the following .cases :—*Donnell v. Jones,* 13 Ala. 509; *Goldsmith v. Picard,* 27 Ala. 142; *Flournoy v. Lyons,* 70 Ala. 313; *Saltmarsh v. Bower,* 22 Ala. 223; *Durr v. Jackson,* 59 Ala. 203; *Floyd v. Hamilton,* 33 Ala. 236; *Adams v. Wellborn,* 78 Ala. 489; *Garrett v. State,* 76 Ala. 21; *Wollner v. Lehman,* 85 Ala. 282; *Acklen v. Hickman,* 63 Ala. 494; *Jacques v. Horton,* 78 Ala. 238; *Doe v. Clayton,* 73 Ala. 359; *Calhoun v. Michael,* 87 Ala. 277; *Bain v. State,* 70 Ala. 4; *Marler v. State,* 67 Ala. 55; *Jonas v. Field,* 83 Ala. 445; *A. G. S. R. R. Co. v. Mt. Vernon Co.,* 84 Ala. 178.

PILLANS, TORREY & HANAW, *contra.*—(1.) The court did not err in sustaining defendants' demurrer to count in complaint claiming special damages for plaintiffs' loss of credit with certain named persons.—*Pollock v. Gantt,* 69 Ala. 373; *Donnell v. Jones,* 13 Ala. 490; *Foster v. Johnson,* 70 Ala. 249; *Fontaine v. Gunter,* 31 Ala. 258; *Hinson v. Williamson,* 74 Ala. 180; *Calhoun v. Hannon,* 87 Ala. 277. (2.) There was no error in permitting Glennon to testify.—*Phœnix Ins. Co. v. Copeland,* 86 Ala. 551; *Bass Co. v. Glasscock,* 82 Ala. 452; *Pollock v. Gantt,* 69 Ala. 373; 1 Greenl. Ev. 534. (3.) The testimony of Sherman and Jacobs was legal and material.—*Acklen v. Hickman,* 63 Ala. 494; 76 Ala. 238; *Cuthbert v. Newell,* 7 Ala. 457; *McCoy v. Watson,* 51 Ala. 466; 1 Brick. Dig. p. 809, § 86. (4.) The court did not err in the rulings upon the charges.—*Durr v. Jackson,* 59 Ala. 203; *O'Grady v. Julian,* 34 Ala. 88; *City Nat. Bank v. Jeffries,* 73 Ala. 183; *Calhoun v. Hannon,* 87 Ala. 277; *Adams v. Wellborn,* 78 Ala. 489; *Snodgrass v. Br. Bk.,* 25 Ala. 161; *Seals v. Robinson,* 75 Ala. 363; *Pollock v. Searcy,* 84 Ala. 263; *Harrell v. Mitchell,* 61 Ala. 270; *Moog v. Farley,* 79 Ala. 252; Cooley on Torts, 475; Bigelow on Frauds, p. 475; Waite on Fraud. Convey. § 239; 1 Waite on Attach., § 97.

COLEMAN, J.—Special averments are necessary to let in evidence for the recovery of special damages, but such special damages must be the natural and proximate result of the wrong in order to authorize their recovery. The averments must also be of such character, if sustained by proof, as to furnish *data* from which the damages may be calculated with reasonable certainty. If the damages be speculative, or too remote, neither averment nor proof will authorize their recovery. Loss of credit and business are the natural consequences

[Marx Bros. v. Leinkauff & Strauss.]

of suing out an attachment against a merchant on account of fraud, and may be averred in the complaint.—*Goldsmith v. Picard*, 27 Ala. 149; *Donnell v. Jones*, 13 Ala. 490; *Flournoy v. Lyon & Co.*, 70 Ala. 313.

In the case of *Pollock & Co. v. Gantt*, 69 Ala. 378, it was held, that "good or bad credit was a conclusion of fact, partly based on opinion and judgment, founded more or less on reputation; that it was a collective fact, made up of many known ingredients. That a witness could speak of credit as a fact, and its extent, but not of its value in dollars and cents.". A merchant's general credit could not be established by proof that two or more named persons were willing to extend to him credit; neither could it be shown that his credit was injured because simply two or three particular persons refused him credit. Business relations may be contracted or interrupted by many considerations not dependent upon the question of credit or ability to pay, and it would be unsafe to declare as a rule that the credit of a merchant, or its loss, are dependent upon his sustaining such a relation to two or three named customers.

In the case from 69 Ala. *supra*, evidence was introduced that Gantt was a general merchant, and among his customers were timber men whose trade he lost by reason of the attachment. This court held, there were no averments in the complaint to authorize the introduction of such evidence, and if there had been, the damages claimed on this account were too remote and speculative. The damages resulting from loss of credit so that plaintiffs could not borrow money from Pollock & Co., or Levy, and Levy & Co., were too remote and speculative, and there was no error in sustaining the demurrer to this part of the complaint.

Indebtedness, or even insolvency, alone, will not justify the suing out of an attachment, but these questions sometimes become important in determining the *bona fides* of the disposition of goods; and "if the question be one of fraud, whatever fact tends to show the good or bad faith of the party throughout the whole transaction, is properly admissible in evidence."—*Durr v. Jackson*, 59 Ala. 203. While plaintiff was a witness in his own behalf, on the cross-examination, it was entirely competent for the defendants to interrogate him on material matters in regard to which he had testified in his deposition taken by defendants under the statute authorizing the examination of parties. The defendants could not offer a part of the deposition in evidence without offering the whole; but the fact of having taken this deposition did not require the defendants to offer it in evidence, and the answer of the witness on cross-examination might determine the ad-

vantage or necessity for using the deposition on the trial. Code, § 2818.

Portions of the testimony of the witness Glennon were objected to, on the grounds that it was "irrelevant and immaterial." We think it was both relevant and material to show the value of the goods attached, and an auctioneer who had sold stocks of goods in Mobile for twenty years was competent to testify that the goods of plaintiffs, sold by him at auction, brought a fair price under the circumstances. The extent of his knowledge of the character of the goods, was a matter of cross-examination and argument to the jury.—*Jefferson Co. Sav. Bank v. Eborn*, 84 Ala. 535.

It was competent to prove by the witness Sheurman, or Sherman (the spelling occurs both ways in the bill of exceptions), that he bought shoes from the plaintiffs, and, after refreshing his memory as he did as to the price paid, to testify to the price paid for them to plaintiffs. It was also competent for the witness to testify that he pointed these shoes out to the witness Jacobs. These are facts. It was also competent for the witness Jacobs to testify that he saw shoes in the store of Sherman, which were pointed out to him by Sherman, and he recognized and identified them as shoes sold by his firm to plaintiffs, and to further testify as to the cost price at which they were sold to plaintiffs. In this way the shoes could be identified, and the price paid by plaintiffs for them, and the price at which plaintiffs sold to Sherman, could be ascertained. But it was not competent to prove by the witness Sherman that he paid eighty cents for the shoes, by a statement to that effect to Jacobs, made in the absence of plaintiffs, and then to permit the witness Jacobs to testify to such a statement. A party can not strengthen his own testimony, by introducing evidence that he made the same statement at other times to different persons. Such evidence may be admissible to impeach or contradict, but not to corroborate.— *Western Asso. Co. v. Stoddard*, 88 Ala. 614. If it was necessary in order to fix in the mind of the witness Jacobs the particular lot of shoes interrogated about, to call his attention to the statement made at the time as to the price paid, for this purpose only, that of identification, such statement was admissible, but not as proof of the price paid.

We find no other error in the record as to the rulings of the court upon the admission of testimony.

The court instructed the jury, "If you believe that Marx Bros. sold goods to Marx of Mississippi, and that at that time the debt to Claflin & Co. existed, this fact, together with the fact of the relationship of the parties, may be looked to as a

[Marx Bros. v. Leinkauff & Strauss.]

fact from which fraud might be presumed." When a conveyance of property is attacked as fraudulent, by creditors whose debts were in existence prior to the date of the conveyance of the property, the burden to show that a valuable and adequate consideration was paid for the property rests upon the purchaser; and when the transaction of sale or purchase is between near relatives, clearer and more conclusive proof is required of the consideration paid and of the *bona fides* of the transaction. The relationship does not raise the presumption of fraud, is not a badge of fraud in itself, neither does it impose upon the purchaser the burden of proof to show the *bona fides* of the transaction. The fact that plaintiffs' debt against the vendor existed prior to the conveyance places the burden of proof upon the purchaser, and, if he be a near relative, the transaction will be more closely scrutinized, and clearer proof will be required to remove the burden, than if the parties were strangers.—*Hubbard v. Allen*, 59 Ala. 301, 297 ; *Gordon v. McIlwain*, 82 Ala. 252; *Pollock v. Searcy*, 84 Ala. 263; *Moog v. Farley*, 79 Ala. 252; *Apfel v. Crane*, 83 Ala. 312; *Calhoun v. Hannon*, 87 Ala. 284.

Cases in which this principle has usually been applied were where the attacking creditor sought to reach the property conveyed, or by process of the writ of garnishment reach a debt due the defendant debtor. The property sold to the brother Lee H. Marx was not attached, neither was he garnisheed. When the issue is one of fraud, great latitude is allowed in the range of the evidence. The actions of the party to whom fraud is imputed, his relative position, a reasonable time before, at, and a reasonable time after the time at which the act of fraud is alleged to have been committed, are all admissible, if they throw light on the transaction.—*Snodgrass v. Br. Bank*, 25 Ala. 174; *Shealy v. Edwards*, 75 Ala. 416.

The evidence in regard to the various sales and the circumstances surrounding them, made to their brother, was admissible, and should have been considered by the jury. There was some evidence connected with these particular sales to the Mississippi brother which tended to show that they were of the same character as those which had been made to him for a number of years, and that they were all "made in the due course of trade," and were at a "fair profit." However weak and inconclusive such testimony may have appeared to the court in the light of other evidence, in formulating a charge to the jury to be applied to the sales made to the brother, the court should not have stated that the jury might presume fraud from the mere existence of plaintiffs' debt to

Claflin & Co., and the relationship of plaintiff to the purchaser, without any reference to the testimony of plaintiff intended to be explanatory of the sales.—*Fariss v. State,* 85 Ala. 5. If they were all made in the "due course of trade," and at a "fair profit," and if this evidence was credited by the jury, the presumption of fraud did not arise, simply from the facts predicated in the charge.

In the case of *Fariss v. State,* 85 Ala., *supra,* it was declared that a charge given on the effect of evidence, must not ignore other testimony, the tendency of which is to vary or impair the force of the testimony the charge rested on. In charging the jury on the effect of the evidence, and referring to the fact "that Lee H. Marx ceased to do business at Shubuta shortly after plaintiffs were attached," the charge entirely ignores the explanation given of this fact. Whether creditable or not, the explanation was a question of fact for the jury, and should not have been omitted in summing up the other facts upon which this charge rested. The presumption conveyed to the minds of the jury, under such circumstances, is, that the explanatory testimony omitted is not entitled to any weight or consideration.

There was no error in assuming that Lee H. Marx was a brother of the plaintiffs. The bill of exceptions shows that the proof was uncontradicted, and that it was an admitted fact. The rule declared in *Jonas v. Field,* 83 Ala. 445, that the court can not assume any fact proven which depends upon parol testimony without invading the province of the jury, does not apply in such cases.

An exception to a part of a charge only, which states a conclusion of law to the jury, will not be sustained, if the statement asserts a correct proposition. In such cases, it will be presumed that a proper predicate of facts either preceded or followed the legal proposition to which it referred, and more especially when the record shows there was such evidence before the jury.

The attachment was sued out for $2,770.00. It was admitted that there was due plaintiff in attachment $2,723.00. The plaintiffs in this suit asked the court to charge the jury, that, to the extent of the difference between the debt claimed in the attachment and the debt due, the attachment was wrongfully sued out. The court refused the charge. The suing out of an attachment can not be both wrongful and rightful at the same time, or *pro tanto* wrong. If the suing out of the attachment was not wholly wrongful, plaintiff could not recover for a wrongful suing out the attachment. Where the disparity of the debt due and that for which an attachment

[Steadham v. Parrish.]

may have been sued out is so great as to manifest an intention to abuse the remedy afforded by the extraordinary process of attachment, possibly in such cases an action for both "vexatious" and "wrongful" use of the writ would lie. Such is not the case here, and the charge was properly refused.—*City Nat. Bank v. Jeffries*, 73 Ala. 190; *Sims v. Jacobson*, 51 Ala. 186.

The other charges to which exceptions were taken and insisted on in argument, are substantially the same as were given in the case of *Calhoun v. Hannon*, 87 Ala. 281, and held by this court to be good.

For the two errors pointed out and commented on, the case must be reversed and remanded.