# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## DECEMBER TERM, 1887.

## Fariss *v.* The State.

*Indictment for Murder.*

1. *Discharge of jurors on special venire, before trial.*—In a capital case, the names of the regular jurors summoned for the week being included in the special *venire* served on the defendant, the subsequent discharge of one or more of them by the court, before the day set for the trial, for reasons deemed good and sufficient, though made without the consent or knowledge of the defendant, and duly excepted to on the trial, is not a reversible error. (*Parsons v. State*, 22 Ala. 50, overruled.)

2. *Charge on part of evidence, or ignoring material evidence.*—A charge given in a criminal case, which asserts the defendant's guilt, or the degree of the offense, if the jury believe the facts stated by the witnesses for the prosecution, ignoring and omitting other material and qualifying facts, which the evidence for the defense tends to establish, is erroneous.

3. *Same; self-defense in case of homicide.*—On a prosecution for murder, a charge instructing the jury that, if the deceased advanced towards the defendant, but did not strike, nor offer to strike him, and defendant shot and killed him, this would be an unlawful killing, would be correct, if there were no qualifying facts in the case; but, if the deceased had an open knife in his hand as he advanced, this would materially qualify the other facts stated, and the charge would be erroneous in omitting or ignoring it.

FROM the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

The defendant in this case, Irvine Fariss, a freedman, was indicted for the murder of Robert Cater (or Cato), another freedman, by shooting him with a pistol; was convicted of manslaughter in the first degree, and sentenced to the penitentiary for the term of ten years. On the trial, as the bill of exceptions shows, the name of J. L. Cobbs being drawn as a juror, who was one of the persons summoned as regular jurors for the week, and whose name was included in the

1

[Fariss v. The State.]

special *venire* served on the defendant, the presiding judge announced that, on Monday of said week, he had excused said juror from attendance, for reasons deemed good and sufficient; and the same announcement was made in reference to four others of the regular jurors, as their names were called. The bill of exceptions states that this action of the court was had without the knowledge or consent of the defendant, and he duly reserved exceptions to it, and moved to quash the *venire* on account of it.

The facts proved on the trial, so far as material to the points decided, are stated in the opinion of the court. The defendant excepted to several charges given at the instance of the State, and among them the following: (3.) "If the proof of self-defense depends entirely on the testimony of the defendant himself, and there is no other witness who testifies to facts tending to prove self-defense, the jury are authorized to consider this fact in weighing the testimony; and they may also consider the fact that the defendant testifies under the influence of great interest in the result of the case, and the further fact, if it be a fact, that there is a conflict between the testimony of the defendant and that of Mr. Johnson, and also between that of the defendant and the other witnesses who swear that they saw the difficulty; and if the jury, from these circumstances, find that the defendant has not told the truth, they may reject his testimony altogether; and if they do reject said testimony, there is no element of self-defense proved in the case."

(7.) "If the jury believe from the evidence, beyond a reasonable doubt, that the defendant went to the house of Abbie Times, and asked, '*What's the matter here?* and that the deceased said, '*I'm attending to my business, you attend to yours,'* and walked towards the defendant; and that the deceased did not strike, nor offer to strike the defendant; and that the defendant stepped back, and shot the deceased with a pistol, and took his life,—this would be an unlawful killing, and he would be guilty of murder, if the jury find, beyond a reasonable doubt, that the shooting was done with malice," &c.

Other exceptions were reserved, which require no notice.

JNO. GINDRAT WINTER, for the appellant.—(1.) The action of the court below in discharging several of the persons summoned as jurors, though said to have been done for reasons deemed good and sufficient, must work a reversal of the judg-

[Fariss v. The State.]

ment in this case.—*Parsons v. State*, 22 Ala. 53, which was decided more than thirty years ago, and has never been questioned. If the court can thus discharge one or more of the jurors specially summoned in a capital case, it may discharge all, and thus nullify the statute which requires a list of the special *venire* to be served on the defendant. The statute was intended to guard and protect a valuable right, and no discretionary power to annul or evade it was given to the court. This action of the court was had without the knowledge or consent of the defendant, and he had no opportunity to object until the facts were developed on the trial. During the trial, while the jury is being organized, the court can not excuse a juror *ex mero motu;* and if he is discharged for cause, the record must show a legal excuse. *Boggs v. State*, 45 Ala. 30; *Robinson v. State*, 52 Ala, 587; *Phillips v. State*, 68 Ala. 469; *Jackson v. State*, 77 Ala. 18; *Shelton v. The State*, 73 Ala. 10; *Posey v. State*, 73 Ala. 493; *Sylvester v. State*, 71 Ala. 17; *Parsons v. State*, 81 Ala. 597. (2.) Charge No. 3 is erroneus, (1) because it is based on a false hypothesis, in assuming that there was no evidence sustaining the plea of self-defense but the testimony of the defendant himself, thereby ignoring the testimony of Johnson and the evidence of character; and (2) in asserting a false legal proposition.—*Jordan v. State*, 81 Ala. 31; 3 Brick. Digest, 284, §§ 523–25; *Nabors v. State*, 82 Ala. 8. (3.) Charge No. 7 is erroneous, (1) because it entirely ignores the evidence which tended to show that the deceased had an open knife in his hand as he advanced; and (2) because it does not properly assert the doctrine of self-defense. The difficulty between the parties occurred at night, and the defendant might not have been able to see whether the deceased had an open knife in his hand; and if the circumstances were such as to reasonably impress him with the honest belief that his life was in danger, or that great bodily harm was threatened, the plea of self-defense is made out, though the danger did not in fact exist.—*Hughes v. State*, 47 Ala. 97; *Rodgers v. State*, 62 Ala. 170; *Lewis v. State*, 51 Ala. 1; *Storey v. State*, 71 Ala. 329; *Cross v. State*, 63 Ala. 40.

THOS. N. McCLELLAN, Attorney-General, for the State.

STONE, C. J.—The defendant was indicted for murder, and convicted of manslaughter in the first degree.

On March 10, 1888, the defendant was arraigned, pleaded not guilty, and Thursday, April 12, 1888, was set for the trial. The court ordered that "fifty jurors, including the regular jurors summoned for the week in which this case is set for trial, be summoned for the trial of this cause." No question is raised on the summoning and impanelling of the jury, except what is after shown.

The case was taken up for trial during the week for which it was set. Pending the drawing of jurors for the purpose of selecting and impanelling the jury, five several names were drawn, each of whom was of "the regular jurors summoned for the week." They not appearing, the court announced, in reference to each of them, that on their several applications, they had been excused by him from attendance on the court as jurymen, for reasons which the court deemed sufficient. This had been done without the knowledge of defendant; and the discharge had been ordered on Monday, the first judicial day of the week. This question was properly reserved for our consideration.

In *Parsons v. State*, 22 Ala. 50, this court held, that the discharge of a juror under circumstances shown above, if objected to on the trial, was a reversible error. In *Sylvester's case*, 71 Ala. 17, speaking of this subject, we said: "Without deciding it to be error to excuse a juror from service, before a capital felony is regularly called for trial, when he is shown to be exempt by statute, we are of opinion that the safer practice is, not to excuse any juror in advance of the trial, until he claims the privilege of such exemption on his name being drawn."—*Phillips v. State*, 68 Ala. 469; *Shelton v. State*, 73 Ala. 5.

This question, however, has been twice decided the other way, and we will treat it as settled.—*Floyd v. State*, 55 Ala. 61; *Jackson v. State*, 77 Ala. 18. We do this not reluctantly, because the rule asserted in *Parsons'* case is exceedingly inconvenient in practice, and it is believed that it accomplishes no good result. It must be presumed that judges, in excusing jurors, act on correct principles, and discharge them only for good and sufficient reasons. *Parsons v. State*, 22 Ala. 50, so far as it conflicts with this opinion, is overruled.

All the witnesses who saw the homicide, testified that it took place in the night-time, in front of Abbie Times' dwelling. Deceased was standing at her door, was acting boisterously, made threats against his own wife, who was within, and had been beating on the door with a stick, and trying to

get in. Defendant coming up, accosted him with the inquiry, "What's the matter here?" Deceased replied to this, and advanced towards defendant. Defendant gave back a few steps, deceased still advancing, when the fatal shot was fired. We say, all the eye-witnesses agree in this much. None of the witnesses were as near to the parties as they were to each other; and while they all, with the exception of the defendant, testified that they saw no knife, he testified that the deceased was advancing on him with a knife. He testified further, that he retreated as far as he could, and into a fence-corner, before he fired the pistol. Johnson, superintendent, though not in sight, testified that he three times heard deceased say, "Turn me loose, or I cut you;" and afterwards he heard the report of the pistol. This tends to prove two things; that defendant had taken hold of deceased, and that deceased threatened to cut him.

In the seventh charge given at the instance of the State, referring to the conduct of the parties immediately preceding the pistol-shot, the court said: If the deceased "walked towards the defendant, and did not strike, or offer to strike the defendant; and defendant, stepping back, shot the deceased with a pistol, and took his life, this would be an unlawful killing; and he would be guilty of murder, if the jury find beyond a reasonable doubt that the shooting was done with malice," &c.

If there had been no testimony except that of the prosecution, this charge would have been correct. It had direct reference to the tendencies of the testimony, and, in the event supposed, would have covered its whole field. So, if the hypothesis of the charge had contained another clause—namely, that *the jury did not believe the evidence tending to show deceased had a knife*—then the charge would have been free from error. Given as the charge was, it instructed the jury that, if they found the facts hypothesized to be true, then the guilt of the defendant followed, and in the degree mentioned, whether the deceased had a knife or not. In other words, that the inquiry of knife *vel non* was immaterial, provided the deceased was simply advancing on the accused, and neither struck, nor attempted to strike him. A charge given on the effect of evidence, must not ignore other testimony, the tendency of which is to vary or impair the force of the testimony the charge is rested on.—*Thompson v. Duncan*, 76 Ala. 334.

It needs no argument to show that, if deceased was ad-

[Fariss v. The State.]

vancing on defendant with a knife, this should exert an influence in determining the fact and extent of defendant's guilt. It would not necessarily make good his plea of self-defense. If he provoked the difficulty, by word, tone or manner, this would deny him the right to claim acquittal.—*DeArman v. State,* 71 Ala. 351. And if he brought on the difficulty, and then slew his adversary pursuant to a formed design, this would be murder. Still, if the deceased had a knife, it varied the principles of law applicable to the case; and any charge on the effect of the evidence, which pretermitted, or ignored that inquiry, must needs be faulty.—3 Brick. Dig. 107, §§ 9, 10. This charge should not have been given.

We do not question the right of any party, in a proper case, to invoke the ruling of the court on his own phase of the testimony. And in many cases he may do this without making any reference to the tendencies of the adversary's evidence. This rule applies when the two categories are so diametrically repugnant that the truth of the one necessarily establishes the falsity of the other. When, however, as in this case, such repugnancy does not exist, but the one category is, at most, a modification of the other without displacing it, a charge which predicates legal accountability of the main facts, without reference to the qualifying facts or circumstances, is an error.—*Thompson v. Duncan, supra.*

The question whether or not there was any testimony on a given point, was for the court to determine, and not for the jury. The testimony of Johnson had some bearing on the inquiry, whether there was a knife. It may have been slight, but the defendant was entitled to have it weighed. So the defendant's good character, if proved, should be considered by the jury, on all debatable questions.—3 Brick. Dig. 227. The third charge is subject to criticism.

Very important inquiries in this case are, the spirit and intent with which the defendant visited the scene of the disturbance. If it was in the interest of peace, or, in a proper spirit, to stop the affray and prevent further violence, his purpose was lawful and praiseworthy. "Blessed is the peace-maker." If, on the other hand, he went as a partizan, or avenger, he put himself outside of legal authority. And the inquiry may arise, why had he a pistol? These are inquiries the jury must answer, in view of all the facts and circumstances. It is not our intention to bias them in their deliberations.

Reversed and remanded.