# Pierson *v.* The State.

### *Indictment for Murder.*

1. *Discharge of juror on special venire.*—In a capital case, a special *venire* having been summoned, the court may excuse from service as a juror a person who is a policeman on active duty; this being, within the meaning of the statute (Code, § 4335), a "reasonable or proper cause to be determined by the court."

2. *Charge as to sufficiency of evidence.*—A charge given in a criminal case, instructing the jury that they must render a verdict of guilty, "if they believe from the evidence," certain facts hypothetically stated, omitting the expression "beyond a reasonable doubt," or other equivalent words, is reversible error, and it is not necessary that the defendant should ask an explanatory charge.

3. *Conspiracy; liability of each for acts of others.*—When two or more persons combine or conspire to do an unlawful act, or to commit a criminal offense, each is equally responsible for the act of the others in furtherance of their common purpose, if he is present at the time, aiding, encouraging, or ready to assist if necessary, and if the act done is within the scope of their common purpose, or is the natural and proximate consequence of the act intended; but they are not responsible for an act prompted by the individual malice of the perpetrator, and it is a question for the jury whether the act done was within the scope of the common purpose, or grew out of the individual malice of the perpetrator.

4. *Charge as to manslaughter.*—When a party is on trial for murder, it is the safer rule for the court to charge the jury as to all the degrees of homicide included in the indictment, "unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree;" but, when the evidence set out in the bill of exceptions shows that the defendant, if guilty at all, is guilty of murder, the failure of the court to charge as to the constituents of manslaughter is not error.

FROM the Circuit Court of Pike.

Tried before the Hon. JOHN R. TYSON.

The defendant in this case, Oliver Pierson, was indicted, jointly with one Will Jackson, for the murder of Robert Henderson, by shooting him with a pistol; was tried separately, convicted of murder in the second degree, and sentenced to the penitentiary for the term of ten years. The bill of exceptions purports to set out "substantially all the evidence in the case," and shows that the parties were all

[Pierson v. The State.]

negroes, and that the difficulty occurred on Sunday after-
noon during the summer of 1892, at a country church on
the railroad between Troy and Brundidge, where a camp-
meeting was in progress. The evidence for the prosecution
tended to show that a quarrel, or disturbance of some kind,
arose between the negroes belonging to the neighborhood of
the two towns; that the defendant was seen retreating be-
fore several negroes from the neighborhood of Troy, holding
a pistol above his head, and threatening to shoot if they did
not hold back; that Henderson, the deceased, came from the
church, and attempted to quell the disturbance; that the
defendant gave up his pistol to Will Jackson, or the latter
claimed and took it, after some conversation between them;
that the defendant picked up a base-ball bat, on the renewal
of the quarrel, and threatened to strike the deceased with
it, when Jackson shot and killed the deceased, after which
he and Jackson ran off down the railroad. The court de-
clines to state the evidence, and a further statement of it is
not necessary to an understanding of the points decided.

In charging the jury, the bill of exceptions states, "the
court defined murder in the first and second degrees, but
did not define manslaughter;" but no exception was reserv-
ed to this omission. The court gave the following charge
at the instance of the prosecution, and the defendant duly
excepted to it: (2.) "If several persons conspire to do an un-
lawful act, as to commit murder, all the members of such
illegal combination are responsible for the act of each other,
done in prosecution of their common purpose; and in this
case, if the jury believe from the evidence that the defend-
ant was acting in concert with Will Jackson, and that it was
their common purpose and design to murder Robert Hen-
derson, and that one of them, in pursuance of this common
purpose, did murder him in this county before the finding
of this indictment, then the defendant would be responsible
for the act of his accomplice, whether he or Jackson shot
the pistol, if the evidence shows that it was done by either
of them."

R. L. WILLIAMS, and W. L. PARKS, for appellant.—(1.) The
court erred in excusing Cowart as a juror.—*Parsons v. State,*
22 Ala. 50; *Britton v. Stebber,* 62 Mo. 370. (2.) The second
charge given at the instance of the prosecution was errone-
ous, because it authorized a conviction although the jury
were not satisfied beyond a reasonable doubt, or to a moral
certainty.—2 Amer. & Eng. Encyc. Law, 657, and notes. (3.)
The charges asked, as to the liability of conspirators or ac-

[Pierson v. The State.]

complices for the acts of each other asserted correct propositions, and ought to have been given,—*Tanner v. State,* 92 Ala. 1.

WM. L. MARTIN, Attorney-General, for the State.—(1.) The court has a discretionary power to excuse a juror, for any cause deemed "reasonable or proper."—Code, § 4535 ; *Fariss v. State,* 85 Ala. 1, which overrules *Parsons v. State,* 22 Ala. 50. (2.) The doctrine of the criminal law is well settled, that, to authorize a conviction, the evidence must satisfy the jury beyond a reasonable doubt, and to a moral certainty ; and the court should so instruct the jury in every case.—19 Amer. & Eng. Encyc. Law, 1079. But it is not necessary that this principle shall be enunciated in every charge given : having once been given in the oral charge of the court, or presumed to have been given in the absence of exception, it is not necessary to repeat it in every charge directed to a particular feature of the case. The second charge given at the instance of the prosecution was directed to the law of conspiracy, and asserted the law correctly on that question ; and a reasonable construction of it would require the jury to find the requisite degree of proof before a conviction. If the defendant apprehended injury from it, he should have asked an explanatory charge.—*People v. Sheldon,* 68 Cal. 434. (3.) As to the law of conspiracy, see *Martin v. State,* 89 Ala. 115 ; *Tanner v. State,* 92 Ala. 1.

COLEMAN, J.—The defendant was tried and convicted of murder in the second degree. The first exception is to the action of the court in excusing the juror Cowart, who had been drawn and summoned on the special *venire.* When his name was called, he stated to the court, that he was a member of the police of the city of Troy, and on active duty, and asked to be excused from service as a juror. The court excused him, and the defendant excepted. Section 4335 of the Criminal Code is as follows : "The court may excuse from service any person summoned as a juror, if he is disqualified, or exempt, or for any other reasonable or proper cause, to be determined by the court." We are of opinion that the excuse given by the juror Cowart, that he was a policeman of the city of Troy on active duty, was a "reasonable or proper cause" within the meaning of the statute. His duties as a policeman could not be attended to while serving as a juror. The case comes within the rule declared in *Fariss v. State,* 85 Ala. 1, and *Maxwell v. State,* 89 Ala. 150.

In the case of *Phillips v. The State*, 68 Ala. 469, the juror claimed to be exempt from jury duty under the provisions of a special statute, and the trial court so held. This court held that the facts did not show he belonged to the class exempted by the statute. Section 4335 of the Code was not considered in that case, and the juror was not excused under its provisions.

The second exception is to the giving charge No. 2 for the prosecution. The objection to this charge is, that the jury were instructed, "if they believe from the evidence that the defendant was acting in concert with Will Jackson," &c. The precise objection is, that the degree of proof required by the charge is too low. Being a criminal trial, the law requires that the proof must satisfy the jury "beyond a reasonable doubt," to authorize a conviction. The proposition is certainly correct. A jury should not convict, unless they are satisfied from the evidence beyond a reasonable doubt of the defendant's guilt. Section 2756 of the Code declares that, "Charges moved for by either party, . . must be given or refused in the terms in which they are written, · · · and may be taken by the jury with them on retirement." Certainly, the charge as given is not the law. It does not appear any where in the record that the court instructed the jury as to the measure of proof required in criminal cases to authorize a conviction. In the charge given, they are instructed "that, if they believe from the evidence," that is sufficient. The jury had this charge "with them on their retirement." The jury are bound by the instruction of the court. They may have believed the facts predicated in the charge, and yet have not been satisfied of their truth beyond a reasonable doubt.

There is no presumption of error without injury in a criminal case in this State. We are aware that it has been held differently in other courts, and that the giving of such a charge merely calls for an explanatory charge, to the effect that "to believe from the evidence" requires the jury "to be satisfied beyond a reasonable doubt."—*People v. Sheldon*, 68 Cal. 434, 438. We can not consent to the doctrine. If a court should charge a jury, in a civil case, that they must be satisfied beyond a reasonable doubt of any fact in dispute, this court would not hesitate to reverse ; and we can not see why, "if to believe the evidence" is not error, and merely calls for an explanatory charge, "to believe beyond a reasonable doubt," in a civil case, should be error, and not held to be a mere statement of law which calls for an explanatory charge. Furthermore, we regard the rule as to giving ex-

[Pierson v, The State.]

planatory charges applies only when the charge given asserts a correct proposition of law, but from its phraseology, or some other cause, is calculated to mislead the jury ; but we can not sanction the application of the rule in cases where the charge given asserts absolutely an incorrect proposition of law. Under this doctrine, every erroneous charge given must be held to be cured by subsequently giving a correct charge. What is a jury to do, with two charges given for their guidance, which assert two propositions of law, the one instructing a conviction if they "believe the evidence," the other instructing them not to convict unless "they are satisfied beyond a reasonable doubt." We hold the court erred in giving the charge.

We are aware that, in some cases in our own courts, where the facts were not disputed, and the only question was whether, as a matter of law upon the undisputed facts, the defendant was guilty, the general charge was given to convict if the jury "believed the evidence," and no exception was taken to the charge on this account. *Green v. State,* 97 Ala. 59.

The law of conspiracy, as applicable to the facts of this case, has been so fully and clearly stated in the cases of *Martin v. The State,* 89 Ala. 115, and *Tanner v. The State,* 9⅃ Ala. 1, we content ourselves with one extract from each case. In the first it is said, on page 119: "Conspiracy, or a common purpose to do an unlawful act, need not be shown by positive testimony. Nor need it be shown that there was pre-arrangement to do the specific wrong complained of. When two or more persons enter upon an unlawful enterprise, with a common purpose to aid, assist, advise, encourage each other in whatever may grow out of the enterprise upon which they enter, each is responsible, civilly and criminally, for everything which may consequently and proximately result from such unlawful purpose, whether specifically contemplated or not, and whether actually perpetrated by all or less than all of the conspirators. And it is not necessary to this equal accountability that positive proof be made of the unlawful common purpose with which the enterprise was entered upon. It may be inferred from the conduct of the participants. 'All those who assemble themselves together, with an intent to commit a wrongful act, the execution whereof makes probable in the nature of things a crime not specifically designed, but incidental to that which was the object of the confederacy, are responsible for such incidental crime. . . . . And where persons combine to stand by one another in a breach of the

peace, with a general resolution to resist to the death all opposers, and in the execution of their design murder is committed, all of the company are equally principals in the murder.'—1 Whar. Cr. Law, § 220.   'It should be observed, however, that while the parties are responsible for conse- quent acts growing out of the general design, they are not for independent acts growing out of the particular malice of. individuals.'—*Ib.*, § 397.   And this is the general doctrine on the subject.—*Smith v. State,* 52 Ala. 407; *Jordan v. State,* 79 Ala. 9; *Williams v. State,* 81 Ala. 1; *Amos v. State* 83 Ala. 1; 1 Bish. Cr. Law, § 649.''   And in *Tanner's Case,* it is said, on page 6:   "And this criminal accountability extends, not alone to the enterprise, adventure, or encounter in which the conspirators are engaged, but it takes in the proximate, natural, and logical consequences of acts intentionally done; and one who is present, encouraging or ready to aid another in such conditions, must be presumed to be cognizant of that other's intention, to the extent above expressed.   If such conspiracy, or community of purpose, embrace the contingency that a deadly encounter may ensue, with the common intention, express or implied, to encourage, aid, or assist, even to the taking of life, should the exigencies of the encounter lead up to that result; then, as a general rule, the act of one becomes the act of all, and the one who encourages, or stands ready to assist, is alike guilty with the one who perpetrates the violence.   And such community of purpose, or conspiracy, need not be proved by positive testimony. It rarely is proved.   The jury are to determine whether it exists, and the extent of it, from the conduct of the parties, and all the testimony in the cause.— *Williams v. State,* 81 Ala. 4; *Martin v. State,* 89 Ala. 115; *Gibson v. State, Ib.* 121.'' Keeping these principles in view, the trial court will have but little difficulty in forming its own charge, and in deter- mining the correctness of charges requested by either side.

We do not think the court erred in not charging the jury of its own motion as to the constituents of manslaughter.   Un- der the facts as disclosed in the record, the defendant was guilty of murder, or of no offense for which he could be con- victed under this indictment.   We do not know that the evidence will be the same on another trial, and we state that it is much the safer rule to charge upon all the degrees of homicide included in the indictment, when a party is on trial for murder, unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree.

There was evidence tending to show a preconcert, a com-

[Gilmore v. The State.]

munity of purpose, on the part of Will Jackson and the defendant, to take the life of deceased, and that defendant was present, aiding, encouraging or abetting Will Jackson, and that defendant himself entertained malice, and had the intent to take life.   But it was for the jury to say what credit should be given to his evidence.

Under the facts of the case as disclosed in the record, the law is, that if Jackson entertained malice towards deceased, and had the intent to kill him, unless the defendant also on his part entertained malice, or unless he knew that Jackson entertained such malice and intent, and with knowledge or notice of such malice and intent aided, encouraged or abetted him, the defendant ought not to be convicted of murder. *Tanner's Case, supra; Jordan v. State*, 79 Ala. 9.   There was evidence tending to show these conditions existed, but it was a question for the jury to say what weight should be given to this evidence.   The charges requested by the defendant, which referred these questions to the jury, should have been given.   We need not specify the charges, and it would not be proper to particularize the facts.

Nothing we have said contravenes or limits the rule which holds an accomplice responsible "for acts which are the direct, proximate, natural result of the common purpose or conspiracy;" but our purpose is to emphasize the fact, that the jury should say from all the evidence whether a particular act was within the scope of the common purpose, or grew out of the individual malice of the perpetrator.—*Tanner v. State, supra.*

What we have said will suffice on another trial.

Reversed and remanded.

