# Bailey, *et al.* *v.* The State.

## *Larceny.*

(Decided July 6, 1910. 53 So. 296.)

1. *Witnesses; Impeachment; Evidence of Difficulty.*—While for the purpose of showing bias or impeaching a state witness, a defendant may show that he and the witness had a prior difficulty, he may not prove its merits or details or any particulars to show who was at fault, but he may only show the fact that there was a difficulty and its gravity.

[Bailey, et al. v. The State.]

2. *Same.*—The latitude of inquiry allowed a defendant on cross examining a state witness on the subject of a prior difficulty between defendant and such witness does not enlarge the scope of inquiry which a defendant may make of his own witness as to such difficulty for the purpose of impeaching such state witness.

3. *Accomplices; Corroboration; Instructions.*—In view of the law that one cannot be convicted upon the uncorroborated testimony of an accomplice, it was not error to charge at the request of the state that if M., a state witness, was not an accomplice, her testimony was sufficient, without corroboration, to sustain a conviction, provided the jury believed from all the evidence beyond a reasonable doubt that the defendants were guilty.

4. *Charge of Court; Directing Verdict.*—Where the evidence offered by the state was sufficient if believed beyond a reasonable doubt to sustain a conviction, the court could not properly direct a verdict for the defendant.

.5. *Same; Form.*—It is not error to refuse a requested instruction consisting of a string of words, without punctuation, and intelligible or unintelligible, accordingly as one may happen to read it, and which required division into two distinct sentences to make it intelligible.

6. *Same; Presumption of Innocence.*—A charge asserting that the innocence of the defendant must be presumed by the jury till the case against him is proved in all its material circumstances, is not good, as the word, circumstances, cannot be considered as the equivalent of the word, elements.

7. *Same; Covered by Those Given.*—It is not error to refuse written instructions substantially covered by written instructions given.

8. *Same; Misleading Instructions.*—Where there are several defendants, a charge asserting that if the jury are reasonably doubtful as to the proof of any material allegation of the indictment they must acquit the defendant J., was misleading and properly refused since it might be construed to mean that if the jury have a reasonable doubt of the guilt of some of the other defendants. J., should be acquitted.

9. *Same; Measure of Proof by State.*—A charge asserting that there should not be a conviction of the defendant unless to a moral certainty the proof excludes every other reasonable hypothesis than that of their guilt, and if the fact can be reasonably reconciled with the theory that some other person or persons and not the defendants, may have done the act charged, their guilt is not shown by the full measure of proof required, requires a too high degree of proof on the part of the state—requires that the state show that no other person other than defendant could have committed the offense.

10. *Same.*—A charge asserting that if the jury would not be willing to act on the evidence in the case if it were in relation to matters of the most solemn importance to their own interest they must acquit, was properly refused as not properly defining the measure of proof required.

11. *Same; Request.*—A charge asserting that a defendant is presumed to be innocent and is not required to prove herself innocent but may "set still" and it is your duty and province to acquit her unless the state by sufficient evidence proves to you her guilt beyond a reasonable doubt, was properly refused.

12. *Same; Misleading Instruction.*—On a charge of burglary and larceny alleged to have been committed by several defendants, an instruction that if the jury have a reasonable doubt whether certain of the defendants broke into and entered the store, they should acquit, was misleading, since those who did not actually break in and enter may have been conspirators or accomplices, and therefore, just as guilty.

13. *Same.*—A charge asserting that if the jury have a reasonable doubt as to whether S. conspired with the other defendant to commit the crime, they must acquit her, was misleading for if she assisted in the crime she would have been guilty.

14. *Same.*—Where it was a question of fact on all the evidence whether or not a certain witness had been impeached, a charge asserting that if the jury did not, on consideration of all the evidence believe that such witness made the statement which another witness attributed to him, such witness was not impeached, was misleading.

15. *Same; Applicability to Evidence.*—Where the evidence is not circumstantial but positive and direct, charges on circumstantial evidence are inapplicable.

16. *Same; Ignoring Evidence.*—Where there was other corroborative evidence, charges asserting that the jury must acquit if the witnesses S. and M. were accomplices, were properly refused as ignoring evidence.

17. *Same; Reasonable Doubt.*—The charge asserting that though there be no probability of his innocence, yet, if there is in the minds of the jury a reasonable doubt of his guilt, it is their duty to give him the benefit of the doubt and acquit, is proper and its refusal error.

18. *Same.*—A charge asserting that if the jury are not satisfied beyond all reasonable doubt to a moral certainty, and to the exclusion of every other reasonable hypothesis but that of the defendant's guilt, they should acquit, and it is not necessary to raise a reasonable doubt that they should find from all the evidence a probability of his innocence, but such a doubt may arise even when there is no probability of his innocence in the testimony, and if they have not an abiding conviction to a moral certainty of his guilt, they should acquit, is proper and its refusal error.

19. *Same; Singling Out Portions of Evidence.*—A charge asserting that if the jury believe the evidence of G. & M., given on a former trial of J., they must acquit the defendant S., is objectionable as directing the minds of the jury to a part only of the evidence, and that part for impeachment only.

20. *Same.*—A charge asserting that the jury in their consideration of all the evidence may look to the fact, if they believe it to be a fact, in S.'s favor, that she discovered the act at the store

[Bailey, et al. v. The State.]

and pointed it out to R. is objectionable as directing the minds of the jury to a single part of the evidence.

21. *Same; Assuming Fact.*—Charges which assume as proven facts for the determination of the jury are properly refused.

22. *Same; Failure to State Proposition of Law.*—Charges which state no proposition of law may be refused without error.

23. *Same; Argumentative.*—A charge asserting that the jury ought not to convict the defendant without a reasonable belief of his guilt, and even such reasonable belief might not be sufficiently strong to exclude a reasonable doubt to the contrary, is a mere argument and properly refused.

24. *Same; Presumption of Innocence.*—A charge asserting that a defendant enters upon trial with a presumption of innocence, and this is a fact in the case, which must be considered with all the evidence, and should not be disregarded, was proper and should have been given.

25. *Same; Incomplete Instructions.*—Where a charge is an incomplete sentence the meaning of which does not fully appear, it is properly refused.

(Evans, J., dissents.)

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

Clevis Bailey and others were convicted of burglary and grand larceny, and they appeal. Reversed and remanded.

The following charge was given for the state:

"(A)   If the jury believe from the evidence beyond a reasonable doubt that Anna Mahone, a state witness, did not participate in the crime charged in the indictment, then her testimony is sufficient without corroboration to sustain a conviction, provided the jury are satisfied beyond a reasonable doubt of the guilt of defendant from all of the evidence in the case."

The following charges were refused for defendants:

(1)   Affirmative charge as to Robert Jones.

(1½)   Affirmative charge as to all the defendants.

"(6)   The innocence of the defendant Robert Jones must be presumed by the jury until the case against him is proved in all its material circumstances beyond all reasonable doubt to find him guilty as charged the

evidence must be strong and cogent, and unless it is so strong and cogent as to show his guilt to a moral certainty, the jury must find him not guilty.

"($6\frac{1}{2}$) The innocence of the defendant must be presumed by the jury," and continue same as 6 as to all the defendants.

(9) Affirmative charge as to Robert Jones.

($9\frac{1}{2}$) Affirmative charge as to all defendants.

"(11) The court charges the jury that, if you are reasonably doubtful as to the proof in this case of any material allegation of the indictment, you must acquit the defendant Robert Jones."

"(8) There should not be a conviction of the defendant Robert Jones unless to a moral certainty it excludes every other reasonable hypothesis than that of his guilt, and, if the facts can be reasonably reconciled with the theory that some other person or persons and not the defendant Robert Jones may have done the acts charged against the defendant Robert Jones, then the guilt of the defendant is not shown by that full measure of proof which the law requires."

($8\frac{1}{2}$) Same as 8 as to all defendants.

"(12) The court charges the jury that the defendant Josephine Segars is presumed to be innocent, and is not required to prove herself innocent, but may set still, and it is your duty and province to acquit her unless the state, by sufficient evidence, proves to you her guilt beyond a reasonable doubt and to a moral certainty."

($12\frac{1}{2}$) Same as 12, but as to all defendants.

"(13) The court charges the jury that if from all the evidence in this case you have a reasonable doubt as to whether or not George Sankey and Anna Mahone, alias Sharpe, broke into and entered the store of Mr. Reynolds, then you must acquit the defendant."

[Bailey, et al. v. The State.]

(13½) Same as 13.

"(14a) To justify a conviction of crime on circumstantial evidence it must be inconsistent with any reasonable theory of innocence."

(14a½) Same as 14a.

"(14b) The court charges the jury that if you believe from all the evidence in this case that George Sankey and Anna Sharpe, alias Mahone, participated in the breaking into the store, then you must acquit the defendant Josephine Segars."

(14b½) Same as 14b, but as to all defendants.

"(15a) Although there may be no probability of the innocence of the defendant Robert Jones, yet, if there is in the minds of the jury a reasonable doubt of his guilt, it is the duty of the jury to give him the benefit of the doubt and acquit him."

(15a½) Same as 15a, but as to all defendants.

(16a) Affirmative charge as to Josephine Segars.

"(15b) The court charges the jury that, if from a careful consideration of all the evidence you have a reasonable doubt as to whether or not Josephine Segars entered into a conspiracy with the others charged in the indictment to rob the store, then you must acquit the defendant Josephine Segars."

(15b½) Same as 15b.

(16a½) Affirmative charge as to all defendants.

"(16b) If you would not be willing to act upon the evidence in this case, if it was in relation to matters of the most solemn importance to your own interest, then you must find the defendant Robert Jones not guilty."

(16b½) Same as 16b, but as to all defendants.

(17a) Affirmative charge as to Lucy Shelton.

(17a½) Same as 17a, but as to all defendants.

"(17b) If the jury believe from the evidence that the witness George Sankey swore on the trial of Robert

Jones, charged with arson, that he did not see the breaking and entering into the storehouse of Reynolds, and that on this trial he swore that he did see the breaking and entering into the storehouse of Reynolds, and if they further believe that said witness wilfully swore falsely as to the above matter on either of these two trials, then the jury may disregard, and give no weight to any portion of the testimony he testified to on this trial."

(17b½) Same as 17b.

"(18) The court charges the jury that if you believe the evidence of George Sankey and Anna Mahone on the trial of Robert Jones at his trial in August, 1908, to be true, then you must acquit the defendant Josephine Segars."

(18½) Same as 18, but as to all the defendants.

"(19) The court charges the jury that in your consideration of all the evidence in this case you may look to the fact, if you believe the same to be a fact, in the defendant Josephine Segars' favor, that she discovered the act at the store and pointed same out to Mr. Reynolds."

(19½) Same as 19.

"(20) If the jury are not satisfied beyond all reasonable doubt to a moral certainty and to the exclusion of every other reasonable hypothesis but that of the guilt of the defendant Robert Jones, then they should find him not guilty, and it is not necessary to raise a reasonable doubt that the jury should find from all the evidence a probability of the defendant's innocence, but such a doubt may arise even when there is no probability of his innocence in the testimony, and, if the jury have not an abiding conviction to a moral certainty of his guilt, it is the duty of the jury to acquit him."

($20\frac{1}{2}$)    Same as 20, but as to all defendants.

"(22)    The jury ought not to convict the defendant Robert Jones without a reasonable belief of his guilt, and even such reasonable belief might not be sufficiently strong to exclude a reasonable doubt to the contrary."

($22\frac{1}{2}$)    Same as 22, but as to all the defendants.

"(25)    The court charges the jury that, if they believe that George Sankey wilfully swore falsely to any material facts in this case, then the jury may disregard all his testimony."

($25\frac{1}{2}$)    Same as 25.

"(26)    The defendant Robert Jones enters into this trial with a presumption of innocence, and this is a fact in the case, which must be considered with all the evidence and should not be disregarded."

($26\frac{1}{2}$)    Same as 26, but as to all defendants.

"(26b.)    The court charges the jury that if they believe that Anna Mahone, alias Sharpe, wilfully swore falsely as to any material facts in this case, then the jury may disregard all of her testimony."

($26b\frac{1}{2}$)    Same as 26b.

(27)    Affirmative charge as to Fed Shelton.

($27\frac{1}{2}$)    Same, but as to all defendants.

"(29)    If in this case the jury do not upon a consideration of all the evidence believe that the witness Narcissus White made the statement which the witness Joe Robinson testified she did make to him, then Narcissus White is not impeached."

"(31)    If the jury believe from the evidence that the witness Anna Mahone testified on the trial of Robert Jones, charged with the offense of arson, that she did not see Robert Jones on the night of the alleged commission of the offense charged in this indictment, and she testified on this trial that she did see him on that night and if the jury further believe from the evi-

dence that the witness Mahone wilfully swore falsely on either of these two trials then the jury may disregard her testimony entirely."

"(33) Before the jury can convict the defendant Robert Jones his guilt must be established to a moral certainty by credible evidence and credible evidence alone, and if the guilt of the defendant Robert Jones depends upon the testimony of George Sankey and Anna Mahone."

(33½) Same as 33.

HILL, HILL & WHITING, and L. A. SANDERSON, for appellants. It was competent to show that Sankey had had a difficulty with one of the defendants, especially in view of the fact that he had denied any such difficulty.—*Jones v. The State*, 76 Ala. 15; *Loveman J. & L. v. Brown*, 138 Ala. 609. Counsel criticise the authority cited by the state, but cite no authority in support of their criticism. Charges 1 and 1½ should have been given.—*Boss v. The State*, 37 Ala. 471; Sec. 7897, Code 1907. Charges 6 and 6½ should have been given. —*Gilmore v. The State*, 99 Ala. 154. Charges 9 and 9½ should have been given.—*Monkers v. The State*, 87 Ala. 98. Charges 8 and 8½ should have been given.—*Gilmore v. The State, supra.* Charge 11 should have been given. —*White v. The State*, 103 Ala. 72. Charges 12 and and 12½ should have been given.—*Neilson v. The State*, 40 So. 222. Charges 14a and 14a½ should have been given.—*Pickens v. The State*, 115 Ala. 42; *Sanford v. The State*, 143 Ala. 78. Charges 15a and 15a½ should have been given.—*Bell v. The State*, 115 Ala. 25; *Carroll v. The State*, 130 Ala. 99; *Croft v. The State*, 95 Ala. 3. Charges 16b and 16b½ should have been given, as well as charges 17b and 17b½. —*Pickens v. The State, supra; Burton v. The State*, 107

Ala. 109; *Brown v. The State*, 108 Ala. 18; *Burton v. The State*, 115 Ala. 1. Charges 20 and 20½ should have been given.—Authorities cited under 15a, etc. Charges 22 and 22½ should have been given.—*Elmore v. The State*, 92 Ala. 51. Charges 25 and 25½ were correct.—*Burton v. The State, supra; Jackson v. The State*, 34 So. 188; *Hale v. The State*, 22 Ala. 85; *Edmundson v. Anniston C. L. Co.*, 128 Ala. 589; *Venable v. Venable*, 51 So. 832. On these same authorities charges 26b and 26b½ should have been given. Charges 26 and 26½ should have been given.—*Neilson v. The State, supra*. Charges 29 and 29½ should have been given.—*Hammond v. The State*, 41 So. 761. Charges 31 and 31½ should have been given. —*Burton v. The State, supra*.

ALEXANDER M. GARBER, Attorney General, PHILLIP H. STERN, Solicitor, and S. H. DENT, for the State. While the fact of a difficulty may be shown and its gravity, to show bias, the details cannot be shown.—*Garrett v. The State*, 76 Ala. 18; *Gordon's Case*, 140 Ala. 29. The giving of charge A was not error. The affirmative charges were properly refused.—*Childress v. The State*, 86 Ala. 72; *Ross v. The State*, 74 Ala. 532; *Malachi v. The State*, 89 Ala. 131; *Berney's Case*, 87 Ala. 80. Charges 8 and 8½ were condemned in *Phillips v. The State*, 50 So. 196, and *Andrews v. The State*, 152 Ala. 18. Charges 14a and 14a½ were properly refused.— *Phillips v. The State, supra; Gordon v. The State*, 147 Ala. 45; *Parham v. The State*, 147 Ala. 62. Charges 16b and 16b½ have been repeatedly condemned.—*Phillips v. The State, supra; Kelly v. The State*, 160 Ala. 49; *Montgomery v. The State*, 160 Ala. 16; *Midley v. The State*, 156 Ala. 78. Charges 26 and 26½ were properly refused.—*Barr v. Chicago*, 10 Ind. App. 473. Counsel discuss the other charges requested by the defendant

[Bailey, et al. v. The State.]

and refused, pointing out various defects, but cite no authority in support of their contention.

EVANS, J.—On examination of defendant Robert Jones, as a witness for himself, after he had testified that he and the state's witness, George Sankey, were not on good terms, that he had had trouble with George Sankey in Mr. Slaughter's lot, his attorney asked him, "Did he (speaking of George Sankey) run you into the crib?" State objected to the question, court sustained the objection, and defendant excepted. The court did not err in this ruling. It was competent to prove that defendant Robert Jones and witness George Sankey had had a prior difficulty, for the purpose of impeaching Sankey's testimony; he being a witness for the state in the pending cause. The fact of the difficulty could be shown and the gravity of the difficulty or the contrary, but its merits or details could not be proved, nor any particulars tending to show who was at fault. The purpose is to show such a bad state of feeling toward the defendant Robert Jones as would tend to bias the testimony of the witness George Sankey.—*Jones v. State,* 76 Ala. 15. The fact that on the cross-examination of the said state's witness, George Sankey, he had denied that he had run the said defendant into the crib, could not help the matter. The indulgence of the court toward defendant on the cross-examination of Sankey could not be moulded into a special privilege for defendant on the direct examination of defendant as a witness for himself. The latitude allowed on a cross-examination of a witness is largely in the discretion of the trial court, but certainly this latitude so allowed should not widen the privilege of defendant in the examination of his own witnesses. The above criticism will apply to all the questions asked the said Robert Jones and to the ruling of the court on which the defendant reserved exceptions.

The court did not err in giving charge A, requested by the state. The charge merely asserts that, if the witness Anna Mahone was not an accomplice, then her evidence was sufficient without corroboration to sustain a conviction, provided the jury believed from all the evidence, beyond a reasonable doubt, that defendants were guilty. This charge was asked for the reason that the law provides that a person cannot be convicted upon the uncorroborated testimony of an accomplice. The meaning evidently intended was that, if the jury found that Anna Mahone was not an accomplice, then her testimony was a sufficient corroboration to satisfy the law on the subject of corroboration, and, if, after considering this corroborative testimony together with all the other evidence, the jury believed beyound a reasonable doubt that the defendants were guilty, then they should find them guilty. The charge has misleading tendencies, but these could have been guarded against by written charges that could have been requested by defendant.

Charges 1 and $1\frac{1}{2}$, 16a, 16a$\frac{1}{2}$, 17a, 17a$\frac{1}{2}$, 27, and 27$\frac{1}{2}$ were properly refused. They were affirmative charges asked by defendants or some one of them, and the evidence offered by the state was sufficient, if believed beyond a reasonable doubt by the jury, to sustain a conviction as to each defendant convicted.

Charge 6 is a string of words without punctuation, and the court should not be held in error for refusing to give it. It is intelligible or unintelligible according to the way one may happen to read it. To make it intelligible, it must be divided into two distinct sentences. No such burden as bringing order out of chaos in reading of written charges requested should be put upon the trial judge. Besides, the word "circumstances" used therein is not an apt word to express the meaning nec-

essary to make the charge a good one. The word "circumstances" can hardly be considered as the equivalent of the word "elements." It is, at least, indefinite and vague in its meaning, and the trial court should not be held in error for refusing the charge. The same is true of charge 6½.

Charge 9, refused to defendants by the court, is substantially the same as charge 25 given to defendant. The same is true of charge 9½ refused to the defendants. Charge 25 was given to each defendant separately as shown by the record.

Charge 11 was erroneous and properly refused for the reason that there were other defendants on trial under the indictment and the allegations of the indictment charged them with the offense also; and the charge might be construed to mean that, if the jury had a reasonable doubt of the guilt of some other defendant, then they should acquit Robert Jones.

Charges 8 and 8½ were properly refused as requiring too high a measure of proof on the part of the state. It required the state to show that no other persons than defendants could possibly have committed the offense.

Charge 12 and 12½ were substantially given in charge C, except the "set still" part, and we think it impossible to "set still."

Charges 13 and 13½ were misleading and properly refused. Those who did not actually or literally break into or enter the store might still be guilty as co-conspirators and helpers in the crime.

Charges 14a and 14a½ were properly refused, as they had no application to the case sub judice. The evidence here not being circumstantial, the charges were calculated to mislead the jury.

Charges 14b and 14b½ were properly refused for the reason that there was other evidence to corroborate that

[Bailey, et al. v. The State.]

of George Sankey and Anna Mahone, viz., that of R. E. Hobbie and others. So, although George Sankey and Anna Mahone may have been accomplices, still there was other corroborative evidence.

Charges 15a, 15a½, 20 and 20½ should have been given. These charges were approved in *Carroll v. State* 130 Ala. 99, 30 South. 394.

Charges 15b and 15b½ were misleading and properly refused. If Josephine Segars assisted in the burglary, that was sufficient to constitute her guilt, though she might not have helped plan it, or given her direct consent to the plan, or have been present when it was planned.

Charges 16b and 16b½ were properly refused, as they do not properly define the measure of proof required of the state in order to convict defendants, and have been often condemned by this court.

Charges 17b and 17b½ were properly refused for the reason that they had been substantially given in charges 13, 21, 27, 28 and N, given at request of defendant.

Charges 18 and 18½ were properly refused, as they directed the minds of the jury to a part only of the evidence, and that part, too, which was introduced only for the purpose of impeachment. Furthermore, the jury in this case probably did not hear the evidence in the case referred to. It is true there is evidence tending to show a part of what they swore to on the other trial; but this charge assumes as a fact that they swore to what the witnesses testified they swore to on the other trial, or what they admitted they swore to. It was all a matter of proof as to what they swore to on the former trial.

Charges 19 and 19½ were properly refused as they directed the minds of the jury to a single part of the

evidence; and, besides, tended to invade the province of the jury, and stated no proposition of law.

Charges 22 and 22½ are argumentative, and were properly refused.

Charges 25 and 25½ are exactly the same, and had already been given several times, in substance, by the court.

Charges 26 and 26½ should have been given.—*Neilson v. State*, 146 Ala. 683, 40 South. 221.

Charges 26b and 26b½ were substantially given in several charges requested by defendant, and were properly refused.

Charge 29 is misleading and was properly refused. Besides, it was a question for the jury, upon all the evidence, as to whether or not she was impeached.

Charge 31 was substantially given in other charges given at the request of defendant.

Charge 32 was substantially given in charge N, requested by defendants. Besides, it ignores the other evidence in the case.

Charges 33 and 33½ are incomplete sentences, and the meaning intended does not fully appear. They were therefore properly refused.

For the errors pointed out, the cause is reversed and remanded.

Reversed and remanded.

DOWDELL, C. J., and McCLELLAN, MAYFIELD, and SAYRE, JJ., concur. EVANS, J., dissents.

EVANS, J.—(dissenting.)—There were two charges asked by one of the defendants, and then by all of defendants, and marked refused by the trial court, which this court decides should have been given, upon the ground that each of them have been heretofore approv-

ed by this court, and, I presume, upon the further ground that they are correct statements of the law and are free from misleading tendencies. These were charges Nos. 20 and 26. For error committed by the lower court in refusing these two charges, the case was reversed and remanded. It is my opinion that the trial court committed no error in refusing these charges, and that the case should have been affirmed.

Charge 20 asserts in effect that there may be a reasonable doubt of the guilt of the defendant when there is no probability of his innocence. This, I think, is not correct. It is true that a thing is probable or improbable according as the weight of the evidence is for or against it. But there is, as every one knows, a meaning of the word "probability" in everyday use among the people, and well recognized by lexicographers. synonymous with that of the word "chance." When we say that there is no probability of an event taking place, we mean that there is no chance, so far as can be foreseen, of such event taking place; that the evidence at hand is all against its taking place. If, in speaking of the weather, we say there is no probability of rain to-day, we do not mean thereby simply that the chances against rain are greater than those for rain, but that there is nothing at all to indicate rain—that the evidence at hand is all against it. The United States Signal Service speaks of the probabilities of the weather to indicate what will probably take place. It seems to me that this is a recognition by them that there are many probabilities which enter into the weather equation. The word "probabilities," as there used, simply means evidential facts.

The Century Dictionary defines the word "probability" in part as follows: "Quantitatively, that character of an argument or proposition of doubtful truth

which consists in the frequency with which like propositions or arguments are found true in the course of experience; thus, if a die be thrown, the probability that it will turn up ace is the frequency with which an ace would be turned up in an indefinitely long succession of throws. * * * Thus, the probability that a die will turn up ace is 1/6." Probability zero represents impossibility." The qualifying words, so frequently used with the word "probability," show that the word is used in this quantitative sense. We frequently say "there is some probability," or "there is no probability," or "there is but little probability," or "there is great probability," or "there is, or is not, the remotest probability." These, and perhaps many other qualifying words are used in that connection, which clearly show that the word "probability" is frequently used, and, I believe, most often used, in this quantitative sense. It is true this court has undertaken to define the word "probability"; but this court has no authority to add to or take from the meaning of words in the abstract. Usage decides the meaning of words.

Charge 26 is as follows: "The defendants enter into this trial with a presumption of innocence, and this is a fact in the case which must be considered with the evidence, and should not be disregarded." What is a fact in the case which must be considered with the evidence? By examining the authorities in this state approving this charge, we can see what this court has understood this charge to mean. The decision in this case is upheld simply by citing the case of *Neilson v. State,* 146 Ala. 683, 40 South. 221, decided by this court, where the charge was in the same language as in this case, and was upheld simply by citing the case of *Amos v. State,* 123 Ala. 50, 26 South. 524, where the charge approved was in the following form, viz.: "I charge

you that the legal presumption of innocence is to be regarded by the jury in every case as a matter of evidence, to the benefit of which the accused is entitled; and as a matter of evidence it attends the accused until his guilt is, by the evidence, placed beyond a reasonable doubt." This last case was upheld by citing *Bryant v. State,* 116 Ala. 446, 23 South. 40, and this by citing the case of *Newsom v. State,* 107 Ala. 133, 18 South. 206; and this one upon the authority of 1 Greenleaf on Evidence, § 34, and that of *Coffin v. United States,* 156 U. S. 432, 15 Sup. Ct. 394, 39 L. Ed. 481. But the case of *Coffin v. U. S.* was decided, upon this point, upon the statement as made by Prof. Greenleaf. It is true the learned judge in the *Coffin Case* quotes from many other authorities; but it is plain to see that none of them were apposite. It would seem that the statement that "this legal presumption of innocence is to be regarded by the jury, in every case, as matter of evidence to the benefit of which the party is entitled," originated with Prof. Greenleaf, as he cited no authority whatever for the statement. It is true that Prof. Greenleaf has been followed in this statement of the law by many of the most eminent judges; but I am persuaded that it was Prof. Greenleaf's unquestioned ability as a writer and lecturer upon the law of evidence that caused these judges to follow him in this matter without questioning the correctness of the rule thus laid down.

It is easy to see that this statement of law—that is, of regarding the presumption of innocence as a matter of evidence—is in conflict with the logic of our decisions at another point. If this statement of the law is correct, then it must follow as a logical consequence that, when the state introduces evidence competent to show the guilt of defendant, there is at once a conflict in the evidence. If there is a conflict in the evidence,

then the general affirmative charge can never be given for the state.—*Grant v. State,* 97 Ala. 35, 11 South. 915. We have many cases holding that the general affirmative charge for the state may properly be given in a criminal case.—*Scott v. State,* 110 Ala. 48, 20 South. 468; *Pierson v. State,* 99 Ala. 148, 13 South. 550; *Jones v. State,* 96 Ala. 56, 11 South. 192; *Johnston v. State,* 91 Ala. 70, 9 South. 71; *Olmstead v. State,* 89 Ala. 16, 7 South. 775.

John Henry Wigmore, professor of the law of evidence in the law school of the Northwestern University, in his excellent and exhaustive "Treatise on the System of Evidence in Trials at Common Law," etc. (section 2491), says: "Nevertheless, it must be kept in mind that the peculiar effect of a presumption 'of law' (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion, *in the absence of evidence to the contrary* from the opponent. If the opponent does offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hand free from any rule."

Again, the same authority (section 2511) says: "The presumption of innocence is a term which has been the subject of two special fallacies, namely: (1) That it is a genuine addition to the number of presumptions; and (2) that it is per se evidence. As to the first of these fallacies it is to be noted that the *'presumption of innocence'* is in truth merely another form of expression for a part of the accepted rule for the burden of proof in criminal cases; i. e., the rule that it is for the prosecution to adduce evidence, and to produce persuasion beyond a reasonable doubt. As to this latter part, the measure of persuasion, the presumption says nothing. As to the former part, the presumption implies what

[Bailey, et al. v. The State.]

the other rule says, namely, that the accused (like every other person on whom the burden of proof does not lie) may remain inactive and secure, until the prosecution has taken up its burden and produced evidence and effected persuasion; i. e., to say, in this case, as in any other, that the opponent of a claim or charge is presumed not to be guilty is to say in another form that the proponent of a claim or charge must evidence it. But in a criminal case the term does convey a special and perhaps useful hint, over and above the other form of the rule about the burden of proof, in that it cautions the jury to put away from their minds all the suspicion that arises from the arrest, the indictment, and the arraignment, and to reach their conclusion solely from the legal evidence adduced. In other words, the rule about burden of proof requires the prosecution by evidence to convince the jury of the accused's guilt; while the presumption of innocence, too, requires this, but conveys for the jury a special and additional caution (which is perhaps an implied corollary to the other) to consider, in the material for their belief, *nothing but the evidence*—i. e., no surmises based on the present situation of the accused—a caution particularly needed in criminal cases. So far, then, as the *'presumption of innocence'* adds anything, it is merely a warning not to treat certain things improperly as evidence. (2) As to the second fallacy, it seems to have been mainly propagated by the passage of Prof. Greenleaf, declaring that 'this legal presumption of innocence is to be regarded by the jury, in every case, as *matter of evidence*, to the benefit of which the party is entitled'; but it cannot be regarded 'as matter of evidence.' No presumption can be evidence; it is a rule about the duty of producing evidence. This is, in itself, only a matter of the theory of presumptions, and to that extent may be regarded as

a mere question of words—of the way of phrasing a rule upon the substance of which there is no dispute. But when this erroneous theory is made the *ground for ordering new trials* (the italics mine) because of the mere wording of a judge's instruction to a jury, the erroneous theory is capable of causing serious harm to the administration of justice."

Also I quote the following footnote from the same author, at bottom of page 3559 on right-hand side: "A glaring instance of this fault is to be found in the decision of *Coffin v. U. S.* (1896) 156 U. S. 432, 162 U. S. 664, 16 Sup. Ct. 394, 16 Sup. Ct. 943 (39 L. Ed. 481, 40 L. Ed. 1109), where the opinion of the court, proceeding upon the above phrase of Greenleaf as a leading authority, declares this 'presumption' to be 'evidence in favor of the accused.' This opinion received apparent sanction in the later case of *Allen v. U. S.* (1896) 164 U. S. 492, 17 Sup. Ct. 154 (41 L. Ed. 528). But in *Agnew v. U. S.* (1897) 165 U. S. 36, 51, 17 Sup. Ct. 235 (41 L. Ed. 624), its particularly objectionable sentence, declaring that 'legal presumptions are treated as evidence,' is referred to as 'having a tendency to mislead.' In this case the trial court had refused to give an offered instruction copying that sentence, and the refusal was held proper; so that the Agnew Decision may perhaps be taken as a recantation to this extent of the unfortunate heresy put forward in the *Coffin Case*. It is to be observed that the opinion in the *Agnew Case* (1897) was published subsequently to a notable lecture on the presumption of innocence, apropos of the *Coffin Case*, delivered by Prof. Thayer at Yale University (in 1896), in which the history of the presumption was carefully examined, its meaning accurately expounded, and the fallacies of the opinion in the *Coffin Case* exposed in detail."

[Steele v. The State.]

With the multitude of written charges that have been approved by this court, it is hardly to be expected that a trial judge could keep them all in mind; hence the necessity that they should be correct expositions·of the law. The trial judge must look to the reason of the law in passing upon the numerous written charges submitted to him under our system of practice, and when charges are approved by this court, contrary to the reason of the law, it is but natural for the trial court, in the hurry which it must use, to forget the exceptions. It is my opinion that the line of decisions in this state holding that "the presumption of innocence is to be regarded as matter of evidence" should be overruled. Neither of the charges here commented on involve any property right, or other right of defendant acquired by virtue of former decisions of the court. Where such is the case, the only question that this court should consider is: Do the charges correctly state the law? If they do, then they should be approved on their own merit; if they do not, then the trial court should be upheld in refusing them, and former errors corrected.